108 N.J. Super. 517 (1969)
261 A.2d 722
O.P. GANJO, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
TRI-URBAN REALTY CO., INC., A CORPORATION, AND GEORGE MOSKOWITZ, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 23, 1969.
*518 Mr. Alfred H. Sauer for plaintiff.
Mr. Abraham I. Mayer for defendants (Mayer & Mayer, attorneys).
*519 ACKERMAN, HAROLD A., J.D.C. (temporarily assigned).
This is an action on a promissory note. The ultimate issue is whether plaintiff is a holder in due course.
On May 6, 1968 one John Ferrante, a plasterer, was employed as a subcontractor by the corporate defendant herein, Tri-Urban Realty Co., Inc. (Tri-Urban). On that day George Moskowitz, the individual defendant and president of the corporate defendant, executed a promissory note as follows:
 OO
 $3000 ____ May 6, 1968
 XX
 One Month after date I promise to pay to
 The order of JOHN FERRANTE
 THREE THOUSAND no .................................. DOLLARS
 ____
 XX
 Payable at NATIONAL NEWARK & ESSEX BANK, MAIN
 OFFICE
 Value received w/int.
 TRI-URBAN REALTY CO. INC.
 Due 6/6/68 GEORGE MOSKOWITZ
 _________________________
 No. 51-5-3453-5
The circumstances surrounding the giving of the note are distinctly familiar to anyone who has had the opportunity of hearing disputes between contractors and subcontractors. Moskowitz was quite concerned over the slow progress of Ferrante's work in completing the plastering work. Ferrante pleaded that he needed money in order to pay his workmen so that the job could be completed. It is undisputed that Ferrante suggested to Moskowitz that the giving of the above note would be a convenient way to facilitate the objective of getting the job done, it being Ferrante's stated intention to discount the note elsewhere. Several days later, however, Ferrante was back in Moskowitz's office claiming that he could not make use of the note previously given because his supplier, Tiger Building *520 Material, Inc., wanted a note with itself named as payee rather than Ferrante. Upon the execution of another note by Moskowitz conforming to Ferrante's desires, Ferrante, I find, returned the previous note to Moskowitz who placed it in his desk drawer.
Moskowitz testified that he then left the room for a few minutes, leaving Ferrante alone in the office. Subsequent events, which will be set forth hereinafter, make it abundantly clear to this court that during this brief interval with Moskowitz out of the office, Ferrante stole the first note out of the desk drawer. Ferrante in his deposition denied this invidious act, contending that Moskowitz voluntarily and knowingly gave him two notes for his use in securing capital in order to finish the job. He has since disappeared and was unavailable to testify at the trial of this action. As I have already indicated, I am satisfied that Moskowitz's version is correct. His testimony that he was in ignorance as to the circulation of the first note until June 6, 1968, when he was called by his bank and informed that the note had been presented for payment, is quite believable.
Several days later we find Ferrante capitalizing on his prior nefarious activity at the expense of plaintiff. On May 15, 1968 Ferrante was also employed as a subcontractor by plaintiff corporation. On that date he asked Martin and Arthur Ganjoin, the officers, directors and principal stockholders of the corporate plaintiff, for monetary assistance. Once again the all too familiar scene emerges portraying a frustrated builder agonizing over the procrastinations of his subcontractor who pleads for sufficient capital to complete the task. In this instance the tableau was augmented by Ferrante's dangling before the Ganjoins a note made payable to himself (from Moskowitz-Tri-Urban). He asked them to discount the note or to find someone who would. The Ganjoins in their testimony both stated that Ferrante had repeatedly asked for and received advances of money during the course of his work for them. It is clear *521 to me that they were extremely desirous of staying "far enough ahead" of Ferrante monetarily so as to encourage him to finish the job for the agreed upon price of $16,700.
To accomplish this purpose they told Ferrante that they could not personally discount the note but that "a friend" would. They told Ferrante that their "friend" could only advance $1,000 to him at this time, the balance (less a $200 service charge) to be paid to Ferrante on the due date of the note if he finished the job for the agreed upon price. They further told Ferrante that since the balance in cash would be given to them by this third party, they would first deduct any amount by which Ferrante's final cost exceeded $16,700.
When Ferrante agreed to this arrangement, the Ganjoins went to their bank and there had the treasurer call the National Newark & Essex Bank to check on Moskowitz's credit. Upon determining that Moskowitz's account was new in that bank, they had the treasurer call another financial institution in which Moskowitz maintained an account. Finding his credit to be satisfactory there, they then indorsed the note over to their bank (Colonia) which credited their corporate account with $2,970 ($3,000 less a $30 service charge). To secure the bank against loss, the Ganjoins simultaneously executed a promissory note to the order of the bank in the amount of $3,000 due June 10, 1968. They then cashed a corporate check for $1,200, took $200 for themselves and gave Ferrante the balance. Subsequently, like the proverbial thief in the night, Ferrante removed his equipment surreptitiously and departed for climes unknown.
Moskowitz, upon being apprised of Ferrante's disappearance and the circulation of this note, stopped payment. The Colonia Bank collected on the note executed by the Ganjoin brothers, who then brought this action against Tri-Urban and Moskowitz on the stolen note.
Defendants contend that plaintiff is not a holder in due course and therefore the theft of the note is a valid defense. Defendants concede, as indeed they must, that if *522 plaintiff is a holder in due course, the defense of theft must fail. N.J.S.A. 12A:3-305 and 306(d).
A "holder" is "a person who is in possession of * * * an instrument * * * issued or indorsed to him or to his order or to bearer or in blank." N.J.S.A. 12A:1-201(20). Clearly, plaintiff is a holder within the meaning of the above definition.
A holder in due course is "a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." N.J.S.A. 12A:3-302(1). Where, as here, a defense exists, the burden of proof is upon plaintiff to show that he is in all the above enumerated respects a holder in due course. N.J.S.A. 12A:3-307(3).
This court finds for the reasons stated hereinafter that plaintiff has met this burden to the extent of $1,000.

I and II

[The court found that plaintiff took the note in good faith and without notice.]

III

VALUE
Under N.J.S.A. 12A:3-303(a) "A holder takes the instrument for value (a) to the extent that the agreed consideration has been performed * * *." Official comment 3 emphasizes that "an executory promise to give value is not itself value * * *." I find no New Jersey authority directly in point. In Korzenik v. Supreme Radio, Inc., 347 Mass. 309, 197 N.E.2d 702 (Sup. Jud. Ct. 1964), plaintiff attorney received two notes "as a retainer for legal services to be performed." Plaintiff's client had obtained them by means of fraud in the inducement which would not constitute a valid defense against a holder in due course. Massachusetts' *523 highest court ruled that a retainer is an executory promise to give value, and therefore plaintiff failed to satisfy this holder in due course requisite. However, as one legal commentator has noted, "though the plaintiff under Section 3-303(a) might have given value to the extent that he had actually performed the executory promise and thus have been a holder in due course to that extent, he failed to prove how much value five days' work represented." Willier and Hart, Bender's Uniform Commercial Code Service, Case Annotations (1969), § 3-303, at 2-846 (emphasis added).
In the matter before me the agreed consideration was $1,000 cash paid to Ferrante at the time of the discounting, with $1,800 to be paid if and when Ferrante completed the job he was doing for plantiff for $16,700. Ferrante in his deposition denied having received $1,000 from the Ganjoins. I find that he did. As to this amount the agreed consideration was performed. With respect to the balance of $1,800, which the Ganjoin brothers never paid, the consideration was simply an executory promise to give value and as such not "value" within N.J.S.A. 12A:3-303(a).
For the reasons stated above this court finds that plaintiff is a holder in due course to the extent of $1,000, and therefore as to this amount the theft of the note by Ferrante does not constitute a defense. Plaintiff is not a holder in due course as to the balance of the note and therefore Ferrante's theft is a defense to that extent.
Since plaintiff is a holder in due course as to the $1,000 actually advanced, it is entitled to that amount of the discount represented by $1,000. That is to say, had it advanced the full agreed upon consideration of $2,800 to Ferrante, it would have been a holder in due course as to this amount and therefore would have been entitled to recover the face value of the note from the maker ($3,000), realizing a discount of $200. Since plaintiff is only a holder in due course as to $1,000, it is entitled to recover not $200 but only so much of this discount which represents the *524 $1,000 advanced. This amount, found algebraically, entitles plaintiff to recover an additional $71.43.
Finally, the only remaining question to be answered is, against whom is the judgment to be rendered, Moskowitz, Tri-Urban, or both? I find as a matter of law that both are liable.
Under N.J.S.A. 12A:3-403(2)(b),
An authorized representative who signs his own name to an instrument * * * except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity * * *.
Since the note named the person represented (Tri-Urban) but did not show that Moskowitz was signing in a representative capacity, Moskowitz is personally bound.
N.J.S.A. 12A:3-118(e) provides:
Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as "I promise to pay."
N.J.S.A. 12A:3-401(2) provides that "a signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." The comment to this section points out that "a signature may be handwritten, typed, printed or made in any other manner."
In light of the above sections, two signatures appear on the note in question  that of George Moskowitz and Tri-Urban. Because it is not otherwise specified, both are jointly and severally liable for the $1,071.43 judgment rendered in this case.