**FIRST SECURITY BANK OF BROOKFIELD, Missouri, Plaintiff-Respondent,**

v.

**FASTWICH, INC., and John J. Smith, II, Defendants-Appellants,**

and

**Gary D. Smith, Cheryl J. Smith and Carolyn S. Smith, Defendants.**

No. WD 31236.

Missouri Court of Appeals, W. District.

Feb. 2, 1981.

Richard N. Brown, Brown & Casey, Brookfield, for defendants-appellants.

Robert Devoy, Brookfield, for plaintiff-respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an appeal from a court tried case wherein First Security Bank of Brookfield (hereinafter referred to as the bank), plaintiff and payee of a promissory note which was in default, obtained a judgment against defendants Fastwich, Inc. (hereinafter referred to as Fastwich), John J. Smith, II, Gary D. Smith, Cheryl J. Smith and Carolyn S. Smith, jointly and severally, in the amount of $10,718.82 plus interest thereon at the rate of 9% per annum from and after June 11, 1979, reasonable attorney's fees in the sum of $2,400.00, and costs. The bank also obtained judgment decreeing judicial foreclosure of a security agreement given by Fastwich to secure payment of the promissory note and sale of the collateral described therein with the proceeds derived therefrom to be applied, to the extent available, in satisfaction of the money judgment. Carolyn S. Smith obtained a judgment on a cross claim against John J. Smith, II, for such amount of the judgment rendered in favor of the bank which she might ultimately be required to pay. A combined counterclaim and cross claim filed by John J. Smith, II, against the bank and Carolyn S. Smith, was dismissed by the trial court prior to trial for failure to state a claim or cause of action.

Initially, only those facts considered necessary to realign the parties and pose the issues on appeal will be set forth. Other facts, as deemed appropriate, will be interspersed throughout discussion of the respective issues.

In consideration of a loan made by the bank to Fastwich, a promissory note was executed on May 3, 1977, in the principal sum of $10,000.00 payable to the order of the bank, with interest at the rate of 9% per annum, said principal and interest payable in monthly installments. The promissory note also contained an acceleration clause and a provision for payment of reasonable attorney's fees to enforce collection in the event of default. The name, "Fastwich, Inc.", appeared (typed) in the upper left hand corner of the note immediately preceding the schedule of payments (typed) and the following language printed in the body of the note, "[a]fter date for value received, the undersigned Maker(s) (if more than one jointly and severally) promise to pay to the order of: FIRST SECURITY BANK OF BROOKFIELD", etc. On the face of the promissory note in the lower right corner, immediately following the printed language, "By signing below the Maker(s)/Borrower(s) sign(s) this note, and also acknowledge(s) receipt of a copy hereof on its inception date", the following appeared:

| " [typed] FASTWICH, INC. | |
| --- | --- |
| [/s/] John J. Smith II | [/s/] Carolyn Smith |
| [/s/] Gary D. Smith | [/s/] Cheryl J. Smith" |

The promissory note was secured by a security agreement executed on May 3, 1977, by Fastwich. Also on May 3, 1977, John J. Smith, II, Gary D. Smith, Carolyn Smith and Cheryl J. Smith, who constituted all of the officers and directors of Fastwich, executed a loan guaranty agreement in favor of the bank to induce it to make the loan to Fastwich.

While the suit brought by the bank was pending, the marriage between John J. Smith, II, and Carolyn S. Smith was dissolved and the decree of dissolution entered therein, as construed by the trial court in the instant case, provided, among other things, that John J. Smith, II, was to receive all stock owned in Fastwich as his sole and separate property and that he indemnify and save harmless Carolyn S. Smith regarding any indebtedness incurred by Fastwich. The decree of dissolution provided the basis for the cross claim filed by Carolyn S. Smith against John J. Smith, II.

After the bank filed its petition it apparently encountered difficulty in obtaining service of process upon Carolyn S. Smith. Consequently, it filed an affidavit to attach certain real property owned by Carolyn S. Smith in Linn County on the grounds that she had concealed herself so that "the ordinary process of law" could not be served upon her and that she was no longer "a resident of the State of Missouri". Shortly thereafter Carolyn S. Smith entered her personal appearance in the action brought by the bank, whereupon, pursuant to a motion made by the bank, the trial court dissolved the attachment. Dissolution of the attachment was the principal basis for John J. Smith, II's combined counterclaim and cross claim against the bank and Carolyn S. Smith.

Fastwich and John J. Smith, II (hereinafter referred to as Smith), the only parties dissatisfied with the judgment rendered by the trial court, frame the issues on appeal in three points: (1) Fastwich and Smith collectively assert that the trial court erred in rendering judgment in favor of the bank and against Fastwich because no admissible evidence existed that the promissory note was a corporate obligation;[1] (2) Smith singularly asserts that the trial court erred in rendering judgment against him and in favor of Carolyn S. Smith on the latter's counterclaim because, as asserted in point (1), the promissory note was not a corporate obligation, and, hence, no obligation arose to indemnify Carolyn S. Smith; and (3) Smith singularly asserts that the trial court erred in dismissing his combined counterclaim and cross claim against the bank and Carolyn S. Smith for failure to state a claim or cause of action for conspiracy. As a prefatory reminder, the scope of appellate review of points (1) and (2) is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

Unfortunately, there is no way to avoid a protracted analysis of the argument tendered by Fastwich and Smith in order to put point (1) in proper perspective. If correctly perceived by this court, Fastwich and Smith take the position that the promissory note, standing alone, constituted the "best evidence" of whether Fastwich was liable as a maker thereon and the bank could not resort to "parol evidence" to aid or assist it in proving that the promissory note was a corporate obligation. They take this position notwithstanding the fact that Fastwich in its answer denied that it "executed" the note. The term "parol evidence" is obviously used by them in the broad sense in which it is defined in Black's Law Dictionary, 1006 (5th Ed. 1979): "*Parol evidence*. Oral or verbal evidence; that which is given by

---

1. This court parenthetically observes that it is unclear from the pleadings and recitals of the judgment whether the money judgment rendered in favor of the bank, relative to fixing joint and several liability on Smith and the other individual defendants, was premised on the promissory note or the loan guaranty agreement. However, the basis for doing so has not been questioned or put in issue on appeal.

word of mouth; the ordinary kind of evidence given by witnesses in court. In a particular sense, and with reference to contracts, deeds, wills, and other writings, parol evidence is the same as extraneous evidence or evidence *aliunde*."

Over a continuing objection by counsel for Fastwich and Smith based upon the best evidence, hearsay and parol evidence rules, the trial court admitted a number of exhibits and entertained certain oral testimony obviously offered by the bank, at least in part, in light of Fastwich's denial that it "executed" the promissory note. Exhibits immediately heretofore referred to consisted of (1) the security agreement and (2) the loan guaranty agreement. They lodged no objection against a certified copy of a resolution of the Board of Directors of Fastwich authorizing its president (Gary D. Smith) and vice-president (John J. Smith, II) to borrow money on its behalf and to execute "evidence of indebtedness as may be required from time to time." The oral testimony heretofore referred to, substantially paraphrased, was as follows: Alan Fischer, president of the bank, testified that the promissory note was "signed" on behalf of Fastwich on May 3, 1977, in consideration of a loan by the bank to Fastwich in the amount of $10,000.00; the proceeds of the loan were deposited to the credit of Fastwich in its checking account with the bank and were used by Fastwich to purchase restaurant equipment in the conduct of its business; the four officers of Fastwich, in the presence of and at the request of Fischer, "signed" the promissory note on behalf of Fastwich; the security agreement was also "signed" at the same time in the presence of and at the request of Fischer; as a condition for making the loan, Fischer required the individual defendants to "personally" sign and execute, in his presence, the loan guaranty agreement.

After laying the initial portion of their argument as a foundation to build upon, Fastwich and Smith then proceed to argue that the promissory note must be evidentially isolated and when viewed in conjunction with the last sentence contained in Comment 2 of the Uniform Commercial Code Comment appended to Section 400.3–403, V.A.M.S., there is no escape from the conclusion that the trial court erred in holding that the promissory note was a corporate obligation.

Section 400.3–403, *supra*, in its entirety, reads as follows:

"(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

Comment 2 of the Uniform Commercial Code Comment to Section 400.3–403, *supra*, in its entirety, reads as follows:

"2. Subsection (2) applies only to the signature of a representative whose authority to sign for another is established. If he is not authorized his signature has the effect of an unauthorized signature (Section 3—404). Even though he is authorized the principal is not liable on the instrument, under the provisions (Section 3—401) relating to signatures, unless the instrument names him and clearly shows that the signature is made on his behalf."

Fastwich and Smith cap their argument by resolutely contending that Fastwich was not liable on the promissory note as the note failed to "clearly" show on its face that Fastwich's signature was "made on . . . [its] behalf". According to them, Fastwich was not liable on the promissory note even though (1) its officers were authorized to borrow money on its behalf and execute such "evidence of indebtedness as . . . [might] be required" and (2) it was named on the promissory note. Moreover, reverting momentarily to the opening segment of their argument, parol evidence was inadmissible to meet or supplement the emphasized portion of Comment 2, *supra*, that the promissory note "clearly" show on its face that Fastwich's signature was "made on . . . [its] behalf", notwithstanding Fastwich's denial that it "executed" the promissory note.

Comment 2, *supra*, cannot be placed in a legal vacuum as urged by Fastwich and Smith, but must be read in context with other salient sections of the Uniform Commercial Code in order to be reconciled.

■ Section 400.3–401, V.A.M.S., captioned "Signature", which reads as follows, is of cardinal importance:

"(1) No person is liable on an instrument unless his signature appears thereon.

(2) A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature."

Comment 1 of the Uniform Commercial Code Comment appended to Section 400.3–401, *supra*, reads, in part as follows:

"1. No one is liable on an instrument unless and until he has signed it. The chief application of the rule has been in cases holding that a principal whose name does not appear on an instrument signed by his agent is not liable on the instrument even though the payee knew when it was issued that it was intended to be the obligation of one who did not sign. . . ."

Comment 2 of the Uniform Commercial Code Comment appended to Section 400.3–401, *supra*, reads, in part, as follows:

"2. A signature may be handwritten, typed, printed or made in any other manner. . . ."

Fastwich's name, appearing in the lower right hand corner of the promissory note, albeit typed, constituted its signature within the prescription of Section 400.3–401, *supra*. In *O. P. Ganjo, Inc. v. Tri-Urban Realty Co.*, 108 N.J.Super. 517, 261 A.2d 722 (1969), a corporate principal was held liable as a maker on a promissory note which was signed in the following manner:

"Tri-Urban Realty Co., Inc.

George Moskowitz"

The authority relied upon by the court for holding that the corporate principal's signature was affixed to the note as a maker being that "N.J.S.A. 12A:3–401(2) [Section 3–401(2) of the Uniform Commercial Code] provides that 'a signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature' . . . [and] [t]he comment to this section points out that 'a signature may be handwritten, typed, printed or made in any other manner.' "

■ Also of cardinal importance is Section 400.3–307, V.A.M.S., captioned "Burden of establishing signatures, defenses and due course", which, in part, reads as follows:

"(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

(a) the burden of establishing it is on the party claiming under the signature; but

(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required. . . ."

Comment 1 of the Uniform Commercial Code Comment appended to Section 400.3–307, *supra*, reads, in part, as follows:

"The question of the burden of establishing the signature arises only when it has been put in issue by specific denial. 'Burden of establishing' is defined in the definitions section of this Act (Section 1–201). The burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine, or authorized as stated in paragraph (b). 'Presumption' is also defined in this Act (Section 1–201). It means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him. He is therefore required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof."

Under Section 400.3–307, *supra*, and Comment 1 of the Uniform Commercial Code Comment, *supra*, appended thereto, Fastwich's signature if not admitted is nevertheless "presumed to be genuine or authorized", and even if it was not admitted and was put in issue by specific denial in the responsive pleading filed by Fastwich, the bank was aided by the presumption that Fastwich's signature "was genuine and authorized", and the burden of going forward shifted to Fastwich "to make some sufficient showing of the grounds for ... [its] denial before the ... [bank] ... [was] put to ... [its] proof ... to show" otherwise. Suffice it to say, neither Fastwich, Smith, nor any of the other defendants ever introduced any evidence whatsoever questioning Fastwich's signature on the promissory note. As a matter of fact, the only evidence offered by any of the defendants regarding the bank's cause of action consisted of the introduction of a signature card appertaining to Fastwich's checking account at the bank.

■ As Fastwich's signature was affixed to the promissory note as a maker, Section 400.3–401, *supra*, and was "presumed" to be "authorized", Section 400.3–307, *supra*, Fastwich and Smith's tortured argument that the promissory note failed to "clearly" show on its face that Fastwich's signature was "made on ... [its] behalf" is rejected. Fastwich's signature as a maker on the promissory note and the presumption that it was authorized collectively suffice to demonstrate that Fastwich's signature on the promissory note was "made on ... [its] behalf" within the contemplation of Comment 2 of the Uniform Commercial Code Comment to Section 400.3–403, *supra*.

■ Going a step further, this court finds no merit in Fastwich and Smith's argument that the promissory note was the best evidence, i. e., the only evidence which could be considered by the trial court in determining whether Fastwich was liable as a maker on the promissory note by reason of Comment 2 of the Uniform Commercial Code Comment to Section 400.3–403, *supra*. Comment 3 of the Uniform Commercial Code Comment to Section 400.3–403, *supra*, sets out various examples of signatures which may be encountered when an agent professes to have signed on behalf of a principal, among which are the following:

"(d) 'Arthur Adams, Agent', or
(e) 'Peter Pringle Arthur Adams', or
(f) 'Peter Pringle Corporation Arthur Adams'."

Comment 3, *supra*, with respect to examples "(d)", "(e)" and "(f)" states that "section [400.3–403(2)(b), *supra*] admits parol evidence between the immediate parties to prove signature by the agent in his representative capacity". The court in *Dynamic Homes, Inc. v. Rogers*, 331 So.2d 326 (Fla. App.1976), considered certain parol evidence which had been admitted by the trial court for the purpose of determining whether two corporate principals, nowhere named in the promissory note, were jointly and severally liable as makers with the individual parties signatory by virtue of the following signatures:

"by /s/ Arthur J. Maas ............ (SEAL)
by /s/ Janet H. Maas ............ (SEAL)
/s/ Arthur J. Maas (SEAL)
ARTHUR MAAS – Individually
/s/ Janet H. Maas (SEAL)
JANET MAAS – Individually"

The first two signatures were equated with example "(d)" set forth in Comment 3 of the Uniform Commercial Code Comment to Section 3–403 of the Uniform Commercial Code.[2] Although the court in *Dynamic Homes, Inc.*, ultimately concluded that the parol evidence which was admitted failed to show that the two purported corporate principals were liable as makers on the promissory note, it appeared to tacitly approve the admission of parol evidence for the purpose of fixing liability upon a corporate principal as a maker of a promissory note where such evidence is admissible under Section 3–403(2)(b) of the Uniform Commercial Code between the immediate parties to show whether an agent signed in a representative capacity.

In the factual context at hand, if Comment 2 of the Uniform Commercial Code Comment to Section 400.3–403, *supra*, is given the restrictive effect advanced by Fastwich and Smith, and relevant parol evidence may be considered under Section 400.3–403(2)(b), *supra*, between the immediate parties to exculpate an agent from personal liability as a maker on a promissory note but may not be considered to fix liability on a principal, no fanciful flight of imagination is required to envision hypothetical situations where neither a principal nor an agent could be held liable as makers on a promissory note. Fastwich and Smith's convoluted argument, if given credence, would produce the anomalous result of permitting Comment 2 of the Uniform Commercial Code Comment to Section 400.-3–403, *supra*, to be used as a shield to protect an agent from personal liability on a promissory note by permitting the admission of parol evidence and as a weapon to defeat fixing liability upon a principal as a maker of a promissory note by excluding parol evidence. Fastwich and Smith, in essence, appear to argue in one breath that the promissory note failed to "clearly" show that Fastwich's signature was made in its behalf, i. e., that it was genuine or authorized, and in the next breath that parol evidence was inadmissible to refute Fastwich's

denial that it was "executed" on its behalf, i. e., that it was not genuine or authorized.

■ As both the promissory note and the parol evidence offered by the bank in response to Fastwich's denial that it "executed" the note support the judgment of the trial court holding Fastwich liable as a maker on the promissory note in question, point (1) collectively asserted by Fastwich and Smith affords no basis for appellate relief. Concomitantly, this disposition of point (1) washes out point (2) singularly asserted by Smith as it was posited upon the contention that Fastwich was not liable as maker on the promissory note. Ergo, point (2) fails to afford Smith any relief from the judgment rendered against him and in favor of Carolyn S. Smith on the latter's cross claim.

■ Point (3) singularly asserted by Smith poses the following question. Did Smith's combined counterclaim against the bank and cross claim against Carolyn S. Smith state a claim or cause of action? As previously noted, the combined counterclaim and cross claim purported to allege a cause of action for civil conspiracy upon the premise that the bank's attachment against certain real property of Carolyn S. Smith was conspiratorially dissolved. Smith also alleged, in a vague and imprecise manner, that the bank and Carolyn S. Smith conspired to obtain a "change of judge" in the case. The allegations are cast in conclusionary terms such as "conspiratal (sic) benefit", "conspiracy" and "conspired". The elements of a cause of action for civil conspiracy are succinctly set forth in *Royster v. Baker*, 365 S.W.2d 496, 499 (Mo.1963), quoting from *Seegers v. Marx & Haas Clothing Co.*, 334 Mo. 632, 66 S.W.2d 526, 528 (1933): " '[I]n order to state a cause of action for an unlawful conspiracy, the petition must not only allege that defendants conspired and agreed to do an unlawful act, but it must also allege that in pursuance of the conspiracy defendants did some unlawful act or acts which resulted in damage to the plaintiff." Allegations in a pleading purporting

**2.** Fla.Stat. § 673.403. Also, Section 400.3–403, V.A.M.S.

to plead a cause of action for civil conspiracy are subject to the established rule that "[m]ere conclusions of the pleader not supported by factual allegations cannot be taken as true and must be disregarded in determining whether a petition states a claim on which relief can be granted." *Tolliver v. Standard Oil Company,* 431 S.W.2d 159, 162 (Mo.1968). A careful reading of Smith's combined counterclaim and cross claim convincingly demonstrates that the allegations therein re conspiracy were, at best, tenuous legal conclusions wholly unsupported by any requisite factual allegations. Smith's conclusionary allegations of conspiracy, in reality, reflect nothing more than a subjective expression of suspicion and fall short of stating a cognizable claim or cause of action. The trial court therefore properly dismissed the combined counterclaim and cross claim for failure to state a claim or cause of action for conspiracy.

Judgment affirmed in all respects.

All concur.