345 S.E.2d 567

**FIRST NATIONAL BANK IN MARLINTON, etc.**

v.

**A.A. BLACKHURST, et al.**

**Nos. 16591, 16602.**

Supreme Court of Appeals of West Virginia.

April 2, 1986.

Rehearing Denied July 9, 1986.

Michael & Kupec, Thomas W. Kupec, Clarksburg, for Blackhurst.

Spilman, Thomas, Battle & Klostermeyer, Charleston, John H. Tinney, Joseph J. Miller, for Long.

Eugene M. Simmons, Marlinton, Robinson & McElwee, Charles R. McElwee, Charleston, for appellee.

NEELY, Justice:

In this case we decide whether the defendants, Jo Debra Long,[1] A.A. Blackhurst, and Robert A. Sheets, are personally liable on notes they executed in favor of the plaintiff, First National Bank in Marlinton. In 1982, the three defendants formed a closely held West Virginia corporation to own and operate a ski apparel shop in Marlinton, West Virginia. Ms. Long, Mr. Blackhurst and Mr. Sheets served as President, Vice-President and Secretary-Treasurer respectively of the corporation, Josh, Inc. Before opening the store, the defen-

---

1. Jo Debra Long is Robert A. Sheets' ex-wife. Accordingly, in some parts of the record below and in some documents she is referred to as "Jo Debra Sheets." In this opinion, we will refer to her as Ms. Long, or "Jo Debra Sheets (Long)."

dants established a line of credit with the First National Bank in Marlinton to be used to finance the purchase of inventory. Between December, 1980 and July, 1981, Ms. Long, Mr. Sheets, and Mr. Blackhurst executed eight notes of varying dates and varying amounts totalling $94,190.00. Although they executed other notes with the bank, those notes are not in issue in this case.

The ski apparel business went straight downhill. The shop in Marlinton failed, Josh, Inc. filed for bankruptcy, and was unable to pay its debts to the bank. Subsequently the bank instituted this action against Ms. Long, Mr. Blackhurst, and Mr. Sheets claiming that the notes were personal obligations of the defendants and not exclusively the corporate obligations of Josh, Inc. The defendants answered that at all times they were acting in their representative capacities as officers of Josh, Inc., that the loans were made to the corporation, and that defendants were not personally liable. Furthermore, one of the defendants, Mr. Blackhurst, contested the genuineness of his signature on five of the notes.

The circuit court denied the defendants' motions for a directed verdict both at the conclusion of the bank's and the defendants' evidence. The jury found that Ms. Long, Mr. Blackhurst, and Mr. Sheets were jointly and severally liable to the bank for payment of indebtedness in the principle amount of $94,190.00 plus interest at the rate prevailing when the loans were made. After the circuit court entered judgment on the verdict, the defendants moved the court to set it aside and render judgment in their favor notwithstanding the verdict, or in the alternative to grant a new trial. The circuit court denied the motion.

Defendants assign the following errors: (1) the trial court improperly refused to grant a directed verdict or a judgment notwithstanding the verdict, or a new trial on the issue of the defendants' personal liability on the notes; (2) the trial court improperly refused to grant a directed verdict, a judgment notwithstanding the verdict, or a new trial on the issue of defendant Blackhurst's disputed signature on certain notes; (3) the trial court improperly gave to the jury Plaintiff's Instruction No. 9; (4) the trial court abused its discretion by allowing the bank to use copies of notes that had not been provided in response to the defendant's discovery requests and, (5) the trial court erred by not granting defendant Long's 24 May 1984 Rule 60(b) motion to set aside the judgment as to her on the grounds that the defendants' jointly retained attorney's multiple representation prejudiced her defense. We shall address these assignments *seriatim.*

### I

The central issue in this case was whether the defendants are personally liable on the notes. On this issue the defendants send up two challenges: 1) they contend that they signed the notes as representatives of Josh, Inc. and are not liable in a personal capacity; and, 2) defendant Blackhurst contends that he did not sign five of the notes.

### A

Commercial paper's value lies largely in its negotiability. Accordingly, Article Three of the *Uniform Commercial Code,* which governs commercial paper, was designed to avoid situations where it would be unclear whether a representative signing a negotiable instrument obligated his principal or himself. *W. Va. Code,* 46–3–403 [1963][2] establishes rules to enable

---

2. *W. Va. Code,* 46–3–403 [1963] provides:

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) *An authorized representative who signs his own name to an instrument*

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) *except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity,* or if the instrument

subsequent holders to determine, by reference solely to the instrument itself, which party is liable on the instrument. In general, representative capacity must be shown on the face of the instrument if a representative signs his own name to an instrument but wishes to avoid personal liability.[3] On each of the notes in this case the three defendants' signatures are affixed in the bottom right hand corner under a typewritten legend stating "Josh, Inc." The defendants argue that the legend indicates that they were signing in their corporate capacity rather than as individuals. The legend alone is not enough to free the defendants of personal liability. But, when the plaintiff is an immediate party to the instrument, and the defendants' signatures do not show their representative capacity, a legend bearing the principal's name is enough to permit the introduction of parol evidence on the issue of personal liability. *W.Va. Code*, 46–3–403(2)(b). *Wood Press, Inc. v. Eisen*, 157 N.J.Super. 57, 62, 384 A.2d 538, 540–41 (App.Div.1978).

We note that if the bank was a holder in due course, and not an immediate party to the note, the defendants' would be personally liable as a matter of law. *See O.P. Ganjo, Inc. v. Tri-Urban Realty Co., Inc.*, 108 N.J.Super. 517, 261 A.2d 722 (Law Div.1969). But because the bank was an immediate party, and because the defendants signed their names under the "Josh, Inc." legend, the trial court properly admitted parol evidence on the subject of personal liability. The bank's witnesses explained their understanding of the credit arrangements as did the defendants. Because the evidence was conflicting, the circuit court was correct in submitting the issues to the jury. Obviously, the jury chose to believe the bank and its witnesses. The circuit court's decisions not to direct the verdict or to set aside the verdict were proper. Syl. Pt. 1, *Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975) (a trial court will grant a directed verdict only when it appears from all the evidence that the party against whom the verdict is sought would not be entitled to a verdict under any view of the evidence).

B

Defendant Blackhurst contests the genuineness of his signature on five of the eight notes. Defendants Long and Sheets do not contest the genuineness of their signatures on these same notes. *W.Va. Code*, 46–3–307 [1963][4] governs who has the burden of establishing signatures on commercial paper. If the plaintiff can establish the effectiveness of the obligor's signature, produces the instrument, and proves that he is the holder in due course, he has established a *prima facie* case for recovery. The signature is presumed to be genuine. *W.Va. Code*, 46–3–307(1)(b) [1963]; *W.Va. Code*, 46–3–307 [1963], Official Comment 1; *See Virginia Nat. Bank v. Holt*, 216 Va. 500, 219 S.E.2d 881 (1975).

The *Code's* presumption of regularity requires that the trier of fact find the

---

does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity. [Emphasis supplied by the Court].

3. On two notes on which the bank did not sue, Loan Nos. 9341–04 and 9880–04, Jo Debra Sheets' (Long) representative capacity as President is shown. If the bank had sued on these notes, Jo Debra Sheets (Long) would not have been liable as a matter of law.

4. *W.Va.Code*, 46–3–307 [1983] provides:
   (1) *Unless specifically denied in the pleadings each signature on an instrument is admitted.*

*When the effectiveness of a signature is put in issue*
   (a) *the burden of establishing it is on the party claiming under the signature; but*
   (b) *the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.*
   (2) When signatures are admitted or established, production of the instrument entitled a holder to recover on it unless the defendant establishes a defense.
   (3) After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course. [Emphasis supplied by the Court].

signature on a negotiable instrument to be genuine unless and until the defendant-obligor has introduced sufficient evidence to support a finding that the signature is not genuine. The evidence need not be sufficient to require entry of summary judgment in the defendant's favor, "but it must be enough to support his denial by permitting a finding in his favor." *W. Va. Code*, 46–3–307 [1963], Official Comment 1. Once sufficient evidence is introduced, the presumption completely disappears. Although a mere denial of the signature's genuineness is insufficient, a denial along with a sample of his true signature will rebut the presumption of genuineness. *622 West 113th Street Corp. v. Chemical Bank*, 52 Misc.2d 444, 446, 276 N.Y.S.2d 85, 88 (N.Y. City Civ.Ct.1966); *Freeman Check Cashing, Inc. v. State*, 97 Misc.2d 819, 412 N.Y.S.2d 963 (N.Y.Ct.Cl.1979). In the present case, Mr. Blackhurst denied the genuineness of his signature and introduced a financial statement bearing his signature into evidence. Accordingly, this evidence was substantial enough to remove the presumption in favor of the bank.

▇ But this only means that the bank bore the burden of establishing that it was more probable than not that the signature was genuine. *W. Va. Code*, 46–3–307 [1963], Official Comment 1; *Bates & Springer, Inc. v. Stallworth*, 56 Ohio App.2d 223, 232–33, 382 N.E.2d 1179, 1186 (1978). Again, both sides introduced witnesses and evidence, the jury believed the bank, and we will not second guess the jury's verdict.

## II

▇ Appellant Blackhurst argues that the trial court erred in giving Plaintiff's Instruction No. 9 which reads:

You are instructed that if you find from a preponderance of the evidence

that Plaintiff's Exhibits 10–15, being notes upon which A.A. Blackhurst disclaims his signature are forgeries, or if you find that they are not his signature then you may find that any notes previous to these which were renewed and which the plaintiff has proven by a preponderance of the evidence were signed by Mr. Blackhurst and were then renewed by notes which he did not sign may still be binding obligations of Mr. Blackhurst; provided that you further find from a preponderance of the evidence that he signed such prior notes in his individual capacity and not as a representative of the corporation, Josh, Inc.

We hold that the instruction correctly states the law and that the record shows that there was sufficient evidence to support the application of the law to this case.

The circuit court's rationale for giving the instruction was as follows: Mr. Blackhurst denied the genuineness of his signature on five of the notes the bank sued upon, and the trial court held:

"... the jury had before it the question of determining whether he did or did not sign it. That was the purpose of Instruction No. 8 and Instruction No. 9, which the Court modified to incorporate that theory. *The Court felt, as a matter of law, that if a person executes an original note and it is subsequently renewed by a forgery, that that doesn't relieve the original obligation, that it is still a genuine obligation, and gave Instruction No. 9 on that basis.*" [Emphasis supplied by the Court].

Plaintiff's Instruction No. 9 is consistent with *W. Va. Code*, 46–3–605 [1963].[5] A cancellation, renunciation or surrender of the instrument is ineffective if it is unintentional, unauthorized or procured by fraud or under a mistake. A renewal note does not discharge the original note unless all of the

---

5. *W. Va. Code*, 46–3–605 [1963] provides:

(1) The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto.

parties thereto agree that the renewal is to have this effect. *Commerce Union Bank v. Burger-In-A-Pouch, Inc.*, 657 S.W.2d 88, 90 (Tenn.1983). An exchange of notes for new notes which, unknown to the holder, contain forged signatures does not operate as a discharge. *Citizens Fidelity Bank & Trust Co. v. Stark*, 431 S.W.2d 722 (Ky. 1968); Hawkland & Lawrence *UCC Series* § 3–605:06, nn. 10–11 [1984]. Plaintiff's Instruction No. 9 correctly stated the law. It was possible to find Mr. Blackhurst liable on the three earlier notes, even if the jury found that the signatures on the subsequent notes had been forged.

■ At the trial, Mr. McCarty testified that the "RN" legend on the face of a note indicated that a note was a renewal of an earlier note. All but one of the notes sued upon by the bank have that designation. Defendant Blackhurst acknowledged his signature on three earlier notes which, by a comparison of amounts and maturity dates, gave the appearance of being renewed by three of the notes sued upon. Accordingly there was sufficient evidence to put the question of Mr. Blackhurst's liability on the three earlier notes before the jury.

### III

■ Mr. Blackhurst also contends that the introduction of these notes into evidence was improper because they were not previously disclosed or presented during discovery. We have outlined the test we will use to determine a discovery error's affect on a trial. We have stated:

> Factors to be considered in determining whether the failure to supplement discovery requests under Rule 26(e)(2) of the Rules of Civil Procedure should require exclusion of evidence related to the supplementary material include: (1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of that party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded.

Syl. Pt. 5, *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983). After considering these factors we find that the failure to supplement discovery is not grounds for awarding a new trial in this case.

The documents that Mr. Blackhurst claims were improperly introduced are documents that he personally signed. Furthermore, they are notes for the benefit of a corporation of which he was vice president and a major stockholder. Accordingly, the prejudice or surprise Mr. Blackhurst experienced must have been minimal. The bank did not introduce these notes in a deliberate effort to achieve surprise; rather Mr. Blackhurst raised the issue of his liability on the notes and the genuineness of his signature. Additionally the defendants had the ability to minimize the prejudice by asking for a continuance. But they did not. Finally, there is no evidence of bad faith on the part of the bank. It was within the trial court's discretion to admit the three notes and the testimony regarding them.

### IV

■ The final error the defendants assign is that the trial court erred in not granting Ms. Long's motion to vacate the judgment pursuant to *W.Va.R.Civ.P.* 60(b). Ms. Long contends that attorney Kupec's joint representation of all the defendants at trial severely prejudiced her and violated DR 5–105(B) of the *West Virginia Code of Professional Responsibility*. In particular, Mr. Kupec, by asserting the defense of forgery on behalf of Mr. Blackhurst, impeached Ms. Long's credibility and thus deprived her of a fair trial.

Both parties recognize that the usual remedy for a violation of the *West Virginia Code of Professional Responsibility* is a disciplinary proceeding against the attorney and not a new trial. However, in some cases, when such a violation prevents a fair trial, a new trial may be appropriate. *Matter of Richard's Estate*, 4 Kan.App.2d 26, 602 P.2d 122 (1979). But counsel's misconduct must be highly egregious before another innocent litigant will be put to the expense of a new trial. In the case before

us, the alleged violation of a disciplinary rule is problematic. DR 5–105 allows the parties to consent to joint representation. Furthermore the consent may be express or implied. Quite often co-defendants in a civil case opt for joint representation to save money. Although we realize that at some point attorney insensitivity to potential conflict problems may constitute grounds for a new trial, it is not our desire to turn the *Code of Professional Responsibility* into fodder for fashioning errors on appeal, and thereby inadvertently create a doctrine of "ineffectiveness of counsel" for civil litigants.

The question of whether a new trial should be granted because of the strategy of counsel rests in the discretion of the trial court, and in the absence of a clear abuse of discretion, the trial court's deci-sion on such a question will not be reversed on appeal. *See* Syl.Pt. 5 *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974). *See also Smith v. Blakey,* 213 Kan. 91, 515 P.2d 1062 (1973) (remarks of counsel are reversible error when, because of them, the parties have not had a fair trial).

All of the defendants' challenges to the verdict being without merit, the judgment of the Circuit Court of Pocahontas County is affirmed.

Affirmed.