457 S.E.2d 133

Troy **MAYNARD**, Plaintiff Below, Appellant

v.

Kenneth **ADKINS**, Defendant Below, Appellee.

No. 22529.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided March 27, 1995.

C. Walker Ferguson, IV, Ferguson & Ferguson, Wayne, for appellant.

Charles E. Hurt, Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon an appeal from the final order of the Circuit Court of Mingo County, West Virginia, entered on December 23, 1993, granting a new trial because of an alleged conflict of interest concerning one of the attorneys. For the reasons set forth below, this Court is of the opinion that the granting of a new trial was error, and, accordingly, the final order is reversed.

I

On May 18, 1985, an accident occurred on U.S. Route 52 in Mingo County, in which Kenneth Adkins, the appellee, drove a pickup truck off the highway in attempting to avoid a collision with an oncoming vehicle. The pickup truck wrecked injuring Adkins' passenger, Troy Maynard, the appellant.

In 1987, an action was instituted by Troy Maynard against Kenneth Adkins concerning the accident. On October 19, 1992, a Mingo County jury returned a verdict against Adkins for $80,000. Kenneth Adkins did not attend the trial. In March 1993, an amended motion for a new trial was filed by Adkins in which it was asserted for the first time that Donald R. Jarrell, who with C. Walker Ferguson, IV, represented Troy Maynard, had a conflict of interest. The trial judge conducted a hearing upon the motion and granted a new trial.

Specifically, Kenneth Adkins was the administrator and one of the beneficiaries of the estate of his deceased mother, Anna Faye Maynard Queen. Subsequently, Kenneth Adkins was replaced as administrator by his brother. Thereafter, Donald R. Jarrell became the attorney for the brother, as administrator. The trial judge determined that it was improper for Donald R. Jarrell to litigate this personal injury action against Kenneth Adkins while Donald R. Jarrell represented the administrator of an estate of which Kenneth Adkins was a beneficiary.

The record demonstrates, as stated above, that Kenneth Adkins did not attend the October, 1992 trial. Nor did he appear at any proceeding or deposition. The record further demonstrates that, during the period of the alleged conflict of interest, no communication of any kind between Kenneth Adkins and Donald R. Jarrell occurred, except for the mailing by Jarrell of a check to Kenneth Adkins concerning a share of proceeds from the Queen estate. According to the response to the petition for appeal, Kenneth Adkins received that check after the trial of this action. Kenneth Adkins stated that he did not know about Donald R. Jarrell's participation in this action until after the trial and that, until that time, his own attorney was unaware of any connection between Kenneth Adkins and Donald R. Jarrell.

In addition to the granting of a new trial upon the above circumstances, the Circuit Court of Mingo County also granted the motion of Donald R. Jarrell to withdraw as counsel in this action, pending resolution of the conflict of interest issue by this Court.

It should be noted that, in 1992, Kenneth Adkins filed an ethics complaint, No. 92–429, with the West Virginia State Bar concerning Donald R. Jarrell's endeavors with regard to the Queen estate. That complaint was found by the Committee on Legal Ethics of the State Bar to be without merit. In so ruling, the Committee noted that, inasmuch as Donald R. Jarrell's representation was on behalf of the administrator of the Queen estate, Kenneth Adkins had "never been represented" by Jarrell. In 1994, the Committee's ruling was affirmed by the new West Virginia Lawyer Disciplinary Board. Relying upon a recent ethics opinion of the American Bar Association (ABA Standing Comm. on Ethics and Professional Responsibility, Formal Op. 94–380 (May 9, 1994)), the Board concluded that, as attorney for the administrator of the Queen estate, Donald R. Jarrell "did not represent Kenneth Adkins."

II

It must be kept in mind that the action before us is not an ethics proceeding. Although issues concerning legal ethics are intertwined herein, this action is an appeal

from the granting of a new trial under *W.Va. R.Civ.P.* 59. Specifically, Rule 59(a) provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]"

■ Here, Kenneth Adkins was awarded a new trial, and as this Court recognized in syllabus point 4 of *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968): "An appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." We recently cited the *Young* case with approval in *In re: West Virginia Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), where we stated: "A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." In the *Asbestos Litigation* case, we clarified this Court's standard of review with regard to the granting of a new trial, and we observed that the role of an appellate court "in reviewing a trial judge's determination that a new trial should be granted is very limited." *See also* syl. pts. 4 and 5, *Kesner v. Trenton,* 158 W.Va. 997, 216 S.E.2d 880 (1975); syl. pt. 1, *Star Piano v. Brockmeyer,* 78 W.Va. 780, 90 S.E. 338 (1916).

■ A factor to be considered in the granting of a new trial is whether "substantial justice" would be effectuated. *W.Va. R.Civ.P.* 61. As Justice Cleckley, in his concurring opinion in the *Asbestos Litigation* case, stated: "We merely are upholding the right of a trial court to grant a new trial when it believes that substantial justice has not been done on the theory that it is an exercise of the trial court's inherent power."

■ Of course, consistent with *Asbestos Litigation,* on the other hand, is the general principle that the judgment of a trial court in awarding a new trial should be reversed if it is "clearly wrong" or if a consideration of the evidence shows that the case was a proper one for jury determination. *Sargent v. Malcomb,* 150 W.Va. 393, 395, 146 S.E.2d 561, 563 (1966). As stated in syllabus point 4 of

*Bronson v. Riffe,* 148 W.Va. 362, 135 S.E.2d 244 (1964): "Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon."

■ In *First National Bank in Marlinton v. Blackhurst,* 176 W.Va. 472, 345 S.E.2d 567 (1986), an attorney represented three defendants in a civil action to recover upon a debt. One of the defendants asserted that the joint representation deprived her of a fair trial and constituted an ethics violation. This Court affirmed the trial judge's rejection of that assertion, and as we recognized in syllabus point 5:

The question of whether a new trial should be granted by reason [of] counsel's possible violation of a Rule of the *West Virginia Code of Professional Responsibility* rests in the discretion of the trial court, and in the absence of a clear abuse of discretion, the trial court's decision on such a question will not be reversed on appeal.

■ Nevertheless, we noted in *First National Bank in Marlinton* that "counsel's misconduct must be highly egregious before another innocent litigant will be put to the expense of a new trial." 176 W.Va. at 478, 345 S.E.2d at 574.

■ *First National Bank in Marlinton* in its "abuse of discretion" context, comports with *Asbestos Litigation* and generally with various earlier decisions of this Court concerning the awarding of a new trial. As syllabus point 7 of *Earl T. Browder Inc. v. Webster County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960), states: "The action of the trial court in setting aside a verdict for the plaintiff and awarding the defendant a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the defendant was committed therein." *See also* syl. pt. 6, *Gault v. Monongahela Power,* 159 W.Va. 318, 223 S.E.2d 421 (1976); syl. pt. 6, *Western Auto Supply v. Dillard,* 153 W.Va. 678, 172 S.E.2d 388 (1970); syl. pt. 7, *Brace v. Salem Cold Storage,* 146 W.Va. 180, 118 S.E.2d 799 (1961); syl. pt. 2, *City of McMechen v. Fidelity and Casualty,* 145 W.Va. 660, 116 S.E.2d 388 (1960); syl., *Ward v.*

*Raleigh County Park Board,* 143 W.Va. 931, 105 S.E.2d 881 (1958); syl. pt. 3, *Ware v. Hays,* 119 W.Va. 585, 195 S.E. 265 (1938).

■ In granting Kenneth Adkins a new trial, the trial judge relied upon *Committee on Legal Ethics v. Frame,* 189 W.Va. 641, 433 S.E.2d 579 (1993). The *Frame* case discussed Rule 1.7(a) of the *West Virginia Rules of Professional Conduct* which provides that a lawyer "shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." In *Frame,* we affirmed the finding of the Committee on Legal Ethics that an attorney violated Rule 1.7(a) in circumstances where the attorney represented a client in her divorce action while litigating a personal injury action against a corporation owned by that client. Although this Court, in *Frame,* stated that "[t]o establish an ethical violation under Rule 1.7(a), one does not have to prove prejudicial impact[,]" 189 W.Va. at 644, 433 S.E.2d at 582, we also looked at the following comment to that Rule:

> Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.

Unlike *Frame,* however, this action did not come to us as an ethics proceeding. Rather, as in *First National Bank in Marlinton, supra,* we are asked to consider whether the circumstances herein warrant a new trial and, in particular, whether an "innocent litigant will be put to the expense of a new trial." Thus, the principles enunciated in *Asbestos Litigation,* and in other cases concerning the granting of new trials, are more relevant than the analysis in *Frame.* Moreover, prejudice, in the legal ethics context rather than in the evidentiary context, is a factor to be considered.

Contrary to the facts in *Frame* concerning the divorce client, the contact in this action between Kenneth Adkins and Donald R. Jarrell was *de minimis* with regard to the Queen estate and nonexistent with regard to this action. As to this action, Kenneth Adkins did not appear at the trial, nor at any proceeding or deposition. Moreover, the petition indicates that Donald R. Jarrell did not become involved in this litigation until 1989, two years after the filing of the complaint.

This Court is aware of the following additional comment to Rule 1.7 of the *West Virginia Rules of Professional Conduct:* "In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. The lawyer should make clear the relationship to the parties involved." In this action, both the Committee on Legal Ethics and the Lawyer Disciplinary Board determined that, with regard to the Queen estate, Donald R. Jarrell represented the administrator and not Kenneth Adkins. The decision of the Board was based upon ABA Standing Comm. on Ethics and Professional Responsibility, Formal Op. 94–380 (May 9, 1994), which states: "The majority of jurisdictions consider that a lawyer who represents a fiduciary does not also represent the beneficiaries[.]" *See also Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080 (1994); *Succession of Wallace,* 574 So.2d 348, 357 (La. 1991).

■ Findings and conclusions of the Committee on Legal Ethics and the Lawyer Disciplinary Board are, of course, not binding upon this Court. Syl. pt. 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). Nevertheless, a review of the record in this action suggests no factual basis upon which to conclude that Donald R. Jarrell represented anyone other than the administrator with regard to the Queen estate, and there was no connection between the Queen estate and this action. In so concluding, however, we recognize the limited circumstances of this

action, and we, therefore, decline to address the complex issues concerning the scope of legal representation in estate matters. We leave a more extended discussion of the law in that area for another day.

It was error, therefore, for the Circuit Court of Mingo County to grant Kenneth Adkins a new trial upon the conflict of interest issue. Specifically, we hold that where an attorney, as co-counsel, represented a plaintiff in a personal injury action and, in an unrelated matter, represented the personal representative of an estate of which the defendant was a beneficiary, the trial court abused its discretion in granting a new trial for the defendant upon those circumstances, where (1) the defendant attended neither the trial nor any pre-trial proceedings with regard to the personal injury action and (2) the record revealed no discussions or meetings between the attorney and the defendant with regard to either the personal injury action or the estate matter.

In his amended motion for a new trial, Kenneth Adkins raised additional issues which he also asserts in this appeal, i.e. (1) that the past medical expenses of Troy Maynard were not proven; (2) that certain instructions given on behalf of Troy Maynard were improper and (3) that the trial judge committed error in not directing a verdict in favor of Kenneth Adkins upon the question of negligence.

 The medical expenses, however, were related to the jury through the testimony of Troy Maynard, and following the verdict the trial judge was of the opinion that the past medical expenses, in the amount of $4,500, had been sufficiently shown. As to the instructions, Kenneth Adkins asserts, *inter alia*, that Troy Maynard failed to produce any evidence of future pain and suffering, and it was, therefore, error for the jury to be instructed upon that element of damages. Dr. Padmanaban, an orthopedic surgeon, however, testified that Troy Maynard would experience future pain from his injury, and the trial judge indicated that future pain and suffering were fair conclusions for the jury to draw in this action. Accordingly, we find no error concerning those issues.

Finally, Kenneth Adkins asserts that there was no evidence of negligence at trial and that the trial judge committed error in not directing a verdict on his behalf. Nevertheless, although the record indicates that this was a close case as to the question of negligence, there was evidence at trial to the effect that Kenneth Adkins may not have had his vehicle under control or may have been inattentive immediately prior to the accident. In any event, the question of negligence was properly one for the jury to consider.

For the reasons set forth above, the final order of the Circuit Court of Mingo County, entered on December 23, 1993, is reversed, and this action is remanded to that Court for reinstatement of the verdict of the jury and for further proceedings consistent with this opinion.

Reversed and remanded.