486 S.E.2d 305

Herbert W. SUMMERS, Jr., Administrator of the Estate of Shawn Patrick Haney, Plaintiff Below, Appellee,

v.

Kimberly L. MARTIN, Defendant Below,

HKD Enterprises Inc., an Ohio Corporation, dba Rugby's Bistro, Defendant Below, Appellant.

No. 23462.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1997.

Decided March 14, 1997.

Petition for Rehearing Refused June 5, 1997.

**566**

Susan S. Brewer and Beth A. Raffle, Steptoe & Johnson, Morgantown, for Appellant.

Robert G. Coury, Sherry, Smith & Coury Woodsfield, Ohio, for Appellee.

PER CURIAM.

This is a wrongful death action. The appeal was taken by the appellant/defendant below, HKD Enterprises, Inc., dba Rugby's Bistro, from an order of the Circuit Court of Monongalia County granting a new trial to the appellee/plaintiff below, Herbert W. Summers, Jr., administrator of the estate of decedent Shawn Patrick Haney.[1] A verdict was returned by the jury in this case in favor of the defendant. However, the circuit court granted the plaintiff's post-trial motion for a new trial, on the basis that the verdict was against the weight of the evidence. Defendant contends on appeal that the circuit court abused its discretion in setting aside the jury's verdict and granting a new trial. We affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The primary factual contentions in this appeal are set out in part III of the opinion.

We pause here to establish the foundation of this case. The facts of this matter begin on August 7, 1991, at about 9:00 p.m. On that date and time Kimberly L. Martin and a female friend named B.J. Findo met, as prearranged, at a tavern located inside the Ramada Inn, in Morgantown. While at the tavern Kimberly and B.J. each consumed one beverage.[2] Within a short span of time the two friends got into their respective cars and drove to a tavern called Archie's Bar, in Saberton. Kimberly testified that while at Archie's Bar she drank two alcoholic beverages. At around 10:00 p.m. the pair left Archie's Bar, in their respective cars, and drove to defendant's establishment in Morgantown. The defendant proffered evidence to show that it checks the identification of patrons to assure that no one under the age of twenty-one is served alcohol. Kimberly, who was twenty years old at the time, testified that none of the defendant's employees checked her identification or inquired as to her age. Kimberly stated that she recalled drinking one alcoholic beverage at the defendant's establishment, but may have had two. While inside the premises Kimberly met the decedent, Shawn Patrick Haney. The discussion between Kimberly and Shawn culminated in plans for Shawn to spend the night with Kimberly at an apartment to which she had access in Saberton.

Kimberly and Shawn left defendant's establishment together in Kimberly's car. When the two reached Interstate 68 eastbound, in route to Saberton, the car left the highway at the inside shoulder, plowed into the median and flipped over, before coming to a rest against an embankment on the far shoulder of the westbound side of traffic. Medical emergency personnel arrived at the scene of the accident. Kimberly and Shawn were transported to Ruby Memorial Hospital. Kimberly was hospitalized for several

1. The complaint in this case also named Kimberly L. Martin as a defendant. However, the record indicates that the plaintiff reached a settlement with her prior to the trial and she was dismissed from this matter. Additionally, James P. Lamb was named as defendant. The record indicates Mr. Lamb simply was not a proper party to the litigation and he was therefore dismissed from the case prior to trial.

2. The record indicates that B.J.'s beverage was alcohol. The record is silent on the nature of the beverage that Kimberly drank.

days due to head and shoulder injuries. It was determined at the hospital that Kimberly had a blood alcohol level of .258 percent—more than twice the legal limit—at the time of the accident. Shawn was pronounced dead upon arrival at the hospital. His blood alcohol level was not definitively determined, but was approximately .06 or .15 percent.

On July 30, 1993, the plaintiff filed the instant suit against the defendant.[3] The plaintiff alleged that the defendant was responsible for Shawn's death, in that Kimberly became intoxicated on its premises. Plaintiff further alleged that Kimberly was driving the vehicle at the time of the accident. Defendant's principle defense was that Kimberly was not driving the vehicle when the accident occurred. The case was tried before a jury on June 21 through June 26, 1995. On June 27, the jury returned a verdict for the defendant. The plaintiff filed a post-trial motion seeking judgment notwithstanding the verdict, or in the alternative, a new trial. By order entered September 14, 1995, the circuit court granted plaintiff's motion for a new trial. The circuit court's order concluded that the verdict was against the weight of the evidence. The defendant thereafter prosecuted this appeal. The issue presented by defendant is whether the circuit court abused its discretion in granting a new trial.

## II.

## DISCUSSION

■ We begin by outlining the appropriate doctrines used by this Court in reviewing a trial court's decision to grant a new trial. We note that " '[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial.' Syl. pt. 4, *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968)." Syl. pt. 2, *In re State Public Bldg. Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995). "[T]he role of the appellate court in reviewing a trial judge's determination that a new trial should be granted is very limited." *Id.,*

193 W.Va. at 126, 454 S.E.2d at 420. In syllabus point 3 of *In re State Public Bldg. Asbestos Litigation* this court stated:

> A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

See also *Payne v. Gundy,* 196 W.Va. 82, 85, 468 S.E.2d 335, 338 (1996); Syl. pt. 1, *Toothman v. Brescoach,* 195 W.Va. 409, 465 S.E.2d 866 (1995); *Coleman v. Sopher,* 194 W.Va. 90, 96, 459 S.E.2d 367, 373 (1995); Syl. pt. 2, *Maynard v. Adkins,* 193 W.Va. 456, 457 S.E.2d 133 (1995). Justice Cleckley in his concurring opinion in *In re State Public Bldg. Asbestos Litigation,* stated that "[b]y broadening the authority of trial courts [to grant new trials] and limiting that of the appellate court [to review the same], we strike a decent note for judicial restraint and judicial economy." *Id.* 193 W.Va. at 132, 454 S.E.2d at 426. The general proposition that this Court review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard was molded into its particulars in *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), where we stated:

> [I]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying

**3.** *See note 1, supra.*

factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

We indicated in syllabus point 1 of *Johnson v. Garlow*, 197 W.Va. 674, 478 S.E.2d 347 (1996) that

'[i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.' Syl. pt. 3, *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963).

We stated in *Maynard v. Adkins*, 193 W.Va. at 459, 457 S.E.2d at 136, that "[a] factor to be considered in the granting of a new trial is whether 'substantial justice' would be effectuated." As Justice Cleckley, in his concurring opinion in the *[In re State Public Bldg.] Asbestos Litigation* case, stated: " 'We merely are upholding the right of a trial court to grant a new trial when it believes that substantial justice has not been done on the theory that it is an exercise of the trial court's inherent power.' " Finally, " '[w]here the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon.' Syl. pt. 4, *Bronson v. Riffe*, 148 W.Va. 362, 135 S.E.2d 244 (1964)." Syl. pt. 1, *Maynard v. Adkins, supra.*

### III.

### ANALYSIS

Neither party has contested on appeal the issue of a tavern owner's liability for the conduct of a patron who was permitted to become intoxicated. Therefore, there is no need for this court to address the area of case law and state statutes which provide for civil lability of negligent sellers of alcohol commonly known as the Dram Shop Acts.

*See Anderson v. Moulder*, 183 W.Va. 77, 82 n. 4, 394 S.E.2d 61, 66 n. 4 (1990) for jurisdictions cited therein.

■ The record indicates that in the instant proceeding the plaintiff's theory of liability on the part of the defendant was twofold: (1) the defendant violated W.Va.Code § 60–7–12(a)(3) (1991) (1996 vol.) by serving alcohol to a person under twenty-one, i.e., Kimberly; and (2) the defendant violated W.Va.Code § 60–7–12(a)(4) by serving alcohol to a person intoxicated, i.e., Kimberly. The nexus which operationalizes the plaintiff's two theories is that Kimberly was the driver of the vehicle at the time of the accident. The primary defense presented by the defendant is that Shawn, and not Kimberly, was driving the vehicle. Both parties have focused their arguments around the identification of the driver of the car. That is, the defendant contends that its evidence established that Shawn was the driver of the car, therefore the circuit court abused its discretion in granting a new trial. Plaintiff contends that his evidence established that Kimberly was the driver of the car, therefore the circuit court did not abuse its discretion in granting a new trial. We analyze the nature of the evidence proffered by both parties on the issue of who was the driver of the car at the time of the accident.

### A.

### *The Evidence*

The defendant called Greg Manning as an accident reconstruction expert. Mr. Manning testified as to what he believed would normally occur in such an accident. It was the expert opinion of Mr. Manning that the passenger in the car would fall out the passenger window. The driver would be hurled through the passenger window shortly thereafter. He opined that the passenger would not sustain severe injuries, but that the force propelling the driver would cause severe injuries.[4] To help support Mr. Manning's the-

4. Mr. Manning placed his theory in the context of the accident in this case as follows:

THE WITNESS: So, Kim Martin would have come out, in my opinion, on the first roll of the car. That is on the right side of the car. It's in the ground and it's starting to come back over into its second one-quarter or the first one-half of the roll.

Now as it does, the car is still proceeding northeast. The car doesn't stop here. It just

ory that Kimberly was not the driver, the defendant called two witnesses who arrived on the accident scene. Their testimony revealed that they discovered Kimberly several yards away from the accident scene. . The defendant also called Dr. John Prescott, who testified that Kimberly's physical bruises were consistent with falling on the grooved surface of a highway.

The plaintiff's evidence included the videotaped deposition of Kimberly. Although Kimberly testified as to the details of what happened during the evening prior to leaving the defendant's establishment with Shawn, she testified that she could not remember who drove her car:[5]

Q. You have no recollection of leaving Rugby's, is that correct?

A. Yes, sir, that is correct.

Q. And you have no recollection of who drove your car, whether you or Shawn, is that correct?

A. Yes, sir, that is correct.

Q. Do you have any recollection whatsoever, of being the passenger or driver of the 1991 Ford Probe, your Ford Probe on the morning of August the 8th?

A. No, sir, I do not.

The plaintiff called Trooper Paul Ferguson, an officer who investigated the accident. Trooper Ferguson testified that the driver's seat of Kimberly's car was positioned close to the steering wheel. He indicated that he had to pull the driver's seat back in order to get into the driver's seat of the car. There was evidence from Trooper Ferguson that he was six feet one inch tall. Shawn was six feet two inches tall. Trooper Ferguson also testified that five strands of Shawn's hair were found stuck on the passenger side sun visor.

Trooper Ferguson's testimony was proffered to show that Shawn could not have driven the car, because the driver's seat was too close to the steering wheel for him to get into the seat. The plaintiff had Kimberly testify that she always drove with the seat close to the steering wheel so her feet could reach the brake and gas pedals. The plaintiff was also able to get Mr. Manning to testify that he did not know whether the driver's seat was moved by the force of the accident.

The plaintiff's expert Salatore Malguarnera, a mechanical engineer, testified that in his opinion Kimberly was driving the car. Mr. Malguarnera's opinion was based largely on the interior layout of Kimberly's car and Trooper Ferguson's testimony about the position of the driver's seat. With respect to the interior of the car Mr. Malguarnera indicated that the passenger side automatic shoulder belt was disconnected, which would explain the ejection of Shawn from the car and the fatal injuries he sustained. Mr. Malguarnera testified that the driver's side automatic shoulder belt was connected.

The plaintiff called Barbara Morris, an EMS technician who treated Kimberly at the accident scene. Technician Morris testified that Kimberly admitted to her that she was the driver of the car. Kimberly later changed her statement. Kimberly also told Technician Morris that she did not lose consciousness during the accident and that she was strapped in the car at the time of the accident.

### B.

### *The Circuit Court's Order*

The circuit court's order granting a new trial to the plaintiff, summed up the court's reasoning as follows:

> As he is catapulted, he goes ahead of the now-rolling-over vehicle. As he goes ahead of it, he strikes the ground. The car is then able, in this trajectory, to then catch up with Haney and roll over Haney.

5. The record is silent as to whether criminal charges were filed against Kimberly for driving under the influence of alcohol, *See* W.Va.Code § 17C–5–2 (1996) (1996 vol.), and negligent homicide, *See* W.Va.Code § 17C–5–1 (1979) (1996 vol.).

keeps going. So she's deposited out and slides along the road, in my opinion. As the vehicle goes up to its top, over its roof, the driver, who is Haney, Haney had come across and hit the sun visor on the passenger side. . . .
. . . Now, they both had to come out the passenger side. So we knew Haney had to go over that way. If his hair got on the sun visor, it had to be that Haney was on the driver's side. If he was on the passenger's side, he would never have hit his head on the sun visor because there was no force in that direction for the passenger.
* * *

... While a jury verdict is entitled to great respect, a jury is not infallible and there are circumstances in which its verdict should be set aside, particularly where the verdict is plainly against the decided weight and preponderance of conflicting evidence.

... Even though a verdict based on conflicting evidence is held in high regard, a Court should not permit a jury to ignore the law and evidence in arriving at a verdict.

While the defendant did attempt to absolve itself from liability by its evidence, this Court firmly believes that the jury's verdict in its favor was clearly against the weight of the evidence. This Court observed the demeanor and character of all witnesses, the parties, and the jurors and believes that the verdict in favor of the defendant is clearly wrong.

The defendant pointed out in its brief that the circuit court's order lacked requisite findings of fact for this Court to review its decision. The circuit court's order could have been more specific and more detailed. However, the core issue identified in the briefs by both parties involved evidence relating to who was actually driving the car. The narrow focus of the appeal enables this Court to look at the evidence on that specific issue and balance it deferentially against the circuit court's order. Had this Court been called upon to focus on numerous other factual issues, the circuit court's order may not have been sufficient to determine whether the circuit court abused its discretion.

The plaintiff's case against the defendant rested solely upon a fair determination of who was the driver of the car. The only substantive evidence presented by the defendant was the testimony of its expert. The trial transcripts do not permit this Court to discern the demeanor of Mr. Manning. However, the trial transcript does clearly illustrate the confusing nature of Mr. Manning's testimony. The elaborate and scientific explanations proffered by Mr. Manning were misplaced by the jury. The circuit court, however, as referee in this matter called upon its years of experience and was able to discern great limitations in Mr. Man-

ning's abstract theories when applied to the actual accident in this case. The circuit court was able to listen to theories of velocity and balance those scientific concepts against the conscious admission by Kimberly that she was in fact the driver of the car. Mr. Manning's testimony of trajectory angles did not cause the circuit court to lose sight of Trooper Ferguson's testimony that the driver's seat was too close to the steering wheel for Shawn to have been the driver. Further, the circuit court carefully reviewed the testimony by Kimberly herself that, because of her diminutive size, she drove with the driver's seat close to the steering wheel.

## IV.

## CONCLUSION

As we pointed out in *In re State Public Bldg. Asbestos Litigation,* the decision to grant or deny a new trial "is committed to the discretion of the trial court because it 'is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match.' *Weil v. Seltzer,* 873 F.2d 1453, 1457 (D.C.Cir. 1989).... There are many critical events that take place during a trial that cannot be reduced to record. Each event may affect the mind of the judge as well as the jury in forming the opinion as to the weight of the evidence as well as the character and credibility of the witnesses. These considerations can and should not be ignored in determining whether a new trial was properly granted." *In re State Public Bldg. Asbestos Litigation,* 193 W.Va. at 132–133, 454 S.E.2d at 426–427 (Cleckley J., concurring). In the instant proceeding the circuit court did not abuse its discretion in granting the plaintiff a new trial.

Affirmed.

STARCHER, J., deeming himself disqualified, did not participate in the decision of this case.