495 S.E.2d 555

**William BROOKS and Willis Brooks, Plaintiffs Below, Appellees,**

v.

**Dennis HARRIS, Defendant Below, Appellant.**

No. 24014.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Oct. 24, 1997.

Mary H. Sanders, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for the Appellant.

J. Franklin Long, Katherine L. Dooley, Law Offices of J. Franklin Long, Bluefield, for the Appellees.

PER CURIAM: [1]

This action is before this Court upon an appeal from the final order of the Circuit Court of Kanawha County, entered on September 9, 1996. This action concerns a motor vehicle accident in Charleston, West Virginia, and the resulting injuries to the appellee, William Brooks, the plaintiff below. The appellant is Dennis Harris, the defendant below. As reflected in the final order, following the entry of judgment for the appellee in the amount of $41,921.86, upon a jury verdict, the circuit court granted the appellee a new trial. The appellant contends that the granting of a new trial constituted an abuse of discretion.

This Court has before it the petition for appeal, all matters of record and the brief filed by the appellant.[2] The primary issue before this Court concerns the circuit court's determination that a new trial should be granted because of some notes found in the jury room by a circuit court staff member following the verdict. For the reasons stated below, this Court is of the opinion that the circuit court's determination in that regard resulted in an improper inquiry into the

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 606 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely *obiter dita*.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

2. It should be noted that on December 26, 1996, the appellee filed a memorandum of law with this Court in response to the petition for appeal. However, following the subsequent granting of the appeal and the issuance of a briefing schedule, the only brief received was filed by the appellant. The attorneys for the appellee explained that they were directed by their client to terminate their active participation in this appeal. Nevertheless, as a result, this Court's review of the issues concerning the appeal has been made more difficult. In fact, the record herein consists of two large boxes containing hundreds of pages of orders, pleadings, transcripts and exhibits.

jury's deliberative process. Consequently, we reverse the final order and remand this action to the circuit court for reinstatement of the $41,921.86 judgment.

I

On December 4, 1992, the appellee and his passenger, Bernard Nunley, were driving north on Pennsylvania Avenue in Charleston, Kanawha County, West Virginia. As the appellee proceeded through the intersection of Pennsylvania Avenue and Quarrier Street, his motor vehicle collided with a motor vehicle driven by the appellant. As the record indicates, the appellee was the only individual injured in the accident. Alleging negligence on the part of the appellant, the appellee instituted this action in the circuit court in October 1994.

At trial, conducted in April 1996, the issues of liability and the extent of the appellee's injuries were contested. The appellee and Bernard Nunley testified that the appellant ran a red traffic light at the intersection. That testimony was confirmed by Mary Teresa Vance, the driver of a third vehicle, on Quarrier Street, at the time. On the other hand, David Huddleston, a pedestrian who witnessed the accident, testified that it was the appellee, rather than the appellant, who ran the light. Officer Herbert Doss of the Charleston Police Department, who later investigated the accident, indicated that he could not be absolutely certain which vehicle ran the traffic light. The appellant did not testify.

With regard to the extent of the appellee's injuries, the evidence of the respective parties also differed significantly. The appellee submitted evidence that he sustained a traumatic brain injury and a fractured neck as a result of the accident and that, because of the permanency of his injuries, he could never return to meaningful employment. In particular, the appellee elicited expert medical testimony, concerning his head injury, to the effect that he suffered from post-concussion syndrome (which includes headaches and a difficulty in concentrating), depression, anxiety and agoraphobia (a fear of open or public places).[3]

By contrast, the evidence of the appellant submitted at trial indicated that the appellee suffered a cervical strain as a result of the accident, rather than a traumatic brain injury or a fractured neck. Moreover, the appellant submitted evidence to the effect that the appellee was malingering, or exaggerating his medical problems, because he desired to avoid returning to employment.[4]

At the conclusion of the trial, the jury found the appellee 40% negligent concerning the accident and the appellant 60% negligent. In addition, the jury returned a verdict in favor of the appellee in the amount of $69,869.77. The $69,869.77 verdict consisted of the following specific findings by the jury upon the appellee's behalf: (1) $20,502.77 for past medical expenses; (2) $14,367.00 for lost wages; (3) $10,000 for pain and suffering; (4) $15,000.00 for future medical expenses; and (5) $10,000.00 for loss of consortium. Following the verdict, the circuit court reduced the $69,869.77 by 40% and entered judgment for the appellee in the amount of $41,921.86.[5]

Thereafter, the appellee filed a motion for a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure.* In the motion, the appellee asserted that the jury,

3. Dr. Larry Rutledge, a neuropsychologist called as a witness by the appellee, stated:
    [I]n my opinion, [the appellee's] brain injury occurred in 1992, and most of the physiologic recovery which occurs from a brain injury happens within six months to two years. He's well beyond the point now where you could reasonably expect any further physiologic recovery, so that I would expect that he would have difficulties and deficits for the rest of his life.

4. Dr. David Buchholz, a neurologist called as a witness by the appellant, testified that the appellee received neither a traumatic brain injury nor a fractured neck as a result of the accident. Rather, Dr. Buchholz indicated that the appellee sustained a cervical strain and that the appellee could have returned to work relatively soon following the accident. Moreover, Dr. Buchholz was of the opinion that the appellee was malingering.

5. As the circuit court instructed the jury with regard to their consideration of the verdict: "If you grant damages to the plaintiff [the appellee], the total amount of damages will be reduced *by this Court* by the percentage of negligence, if any, that you find on his behalf." (emphasis added).

during its deliberations, had improperly reduced the appellee's past medical expenses by 40%. According to the appellee, such a reduction was contrary to the admonition given to the jury that the circuit court, and not the jury, would reduce the verdict based upon negligence. *See* n. 5, *supra.* Specifically, the appellee indicated that he had demonstrated his past medical expenses to be $34,171.29 during the trial and that by reducing that amount by 40%, the jury had arrived at the $20,502.77 figure. As stated above, the $20,502.77 in past medical expenses was part of the $69,869.77 verdict which the circuit court reduced by 40%.

The appellee's assertion that the jury had improperly reduced the appellee's past medical expenses by 40% was based upon a letter sent to counsel for the parties by the circuit court. That letter stated: "Please find enclosed a copy of the jury's notes that my courtroom clerk found in the jury room following the *Brooks v. Harris* trial. I felt compelled to send these to each of you for your review." The notes enclosed with the letter depicted a calculation whereby the number $34,171.29 had been multiplied by .60 to equal $20,502.77.

The circuit court conducted a hearing upon the appellee's motion, and, pursuant to the final order of September 9, 1996, granted a new trial. As the final order states: "The Court is satisfied that papers found in the jury room following deliberations indicate that the medical bills of [the appellee] were reduced by forty percent (40%), the percentage of negligence assessed to [the appellee], in direct contravention of the instructions of the Court." This appeal followed, and the appellant seeks reinstatement of the $41,921.86 judgment upon the jury verdict.

## II

Pursuant to Rule 59(a) of the *West Virginia Rules of Civil Procedure,* a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law." *See generally* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 447–50 (Michie 1960); Vol. 11, Wright, Miller & Kane, *Federal Practice and Procedure,* p. 37–223 (West Pub.1995).

In *Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), this Court stated that "we review a circuit court's ruling on a motion for a new trial under an abuse of discretion standard." That statement in *Tennant* is derivative of syllabus point 3 of *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), which holds:

A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

*See also* syl. pt. 1, *Witt v. Sleeth,* 198 W.Va. 398, 481 S.E.2d 189 (1996); syl. pt. 1, *Toothman v. Brescoach,* 195 W.Va. 409, 465 S.E.2d 866 (1995); *Coleman v. Sopher,* 194 W.Va. 90, 96, 459 S.E.2d 367, 373 (1995); *Maynard v. Adkins,* 193 W.Va. 456, 459, 457 S.E.2d 133, 136 (1995).

In language comparable to the above holding in *Asbestos Litigation,* this Court observed in syllabus point 4 of *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968), *overruled on other grounds in Tennant, supra,* that "[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." Nevertheless, as this Court acknowledged in *Maynard, supra,* "consistent with *Asbestos Litigation,* on the other hand, is the general principle that the judgment of a trial court in

awarding a new trial should be reversed ... if a consideration of the evidence shows that the case was a proper one for jury determination." 193 W.Va. at 459, 457 S.E.2d at 136. Accordingly, we also note syllabus point 4 of *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976), which holds:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

*See also* syl. pt. 2, *Witt, supra; Cline v. Joy Mfg. Co.*, 172 W.Va. 769, 774, 310 S.E.2d 835, 840–41 (1983).

■ In this action, the appellant contends that the granting of a new trial, based upon the notes found in the jury room, constituted an abuse of discretion. As stated above, the circuit court determined, from the notes, that the jury had reduced the appellee's past medical expenses by 40%, the appellee's comparative fault, in contravention of the instructions of the circuit court. Although the appellee asserts that post-trial interviews ·with various jurors confirmed that determination, the record before this Court contains no transcripts of such interviews or evidence of any kind concerning either the authenticity of the notes or an explanation as to their meaning.[6] In any event, contends the appellant, such an inquiry into the verdict, through the use of the notes, constituted an improper inquiry into the jury's deliberative process.

■ In *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981), an accused in a criminal case sought to have his conviction of assault and battery set aside because, after the trial, a member of the jury claimed (1) to have misunderstood the law concerning the case, (2) to have been verbally abused by other jurors and (3) to have been pressured into voting for a conviction. In affirming the conviction, however, this Court indicated that the matters raised by the juror related, intrinsically, to the jury's deliberative process and resulted in no grounds to set the verdict aside. As syllabus point 1 of *Scotchel* holds: "A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." *See also* syl. pt. 2, *McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170 (1996); syl. pt. 3, *State v. Richards*, 195 W.Va. 544, 466 S.E.2d 395 (1995); *State ex rel. Trump v. Hott*, 187 W.Va. 749, 751, 421 S.E.2d 500, 502 (1992); syl. pt. 1, *Livengood v. Kerr*, 182 W.Va. 681, 391 S.E.2d 371 (1990); syl. pt. 3, *State v. Banjoman*, 178 W.Va. 311, 359 S.E.2d 331 (1987); *Haight v. Goin*, 176 W.Va. 562, 564, 346 S.E.2d 353, 355 (1986). Moreover, as observed, in *Scotchel*, in syllabus point 3: "Ordinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict." *See also West Virginia Rules of Evidence* 606(b).[7]

Consistent with this Court's opinion in *Scotchel*, and more on point factually, is *McDaniel, supra*. In *McDaniel*, an action involving an automobile accident, the jury returned an award of damages for the plain-

---

6. As the petition for appeal states:

   [T]here was absolutely no juror testimony regarding the meaning of the notes. Despite the alleged interviews of some or all of the jurors after the trial, [the appellee was] unable to get even one juror to come forward by testimony, affidavit, or otherwise, that the jury reduced [the appellee's] medical bills by his share of comparative fault.

7. Rule 606(b) states:

   *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

tiff and also determined that the plaintiff was 40% negligent. The circuit court then reduced the damage award by the 40% and entered judgment. Thereafter, the plaintiff challenged the judgment order by asserting that a member of the jury had indicated that the jury award had already been reduced, by the jury, by 40%. Therefore, according to the plaintiff, the circuit court had made a second, unwarranted reduction of 40%. Agreeing with the plaintiff, the circuit court increased the amount of the judgment accordingly.

■ Upon appeal, however, this Court, in *McDaniel*, concluded that the action of the circuit court, in modifying the amount of the judgment, constituted an abuse of discretion. Relying in part upon the principles expressed in *Scotchel*, syllabus point 4 of *McDaniel* holds:

> When a trial court modifies a judgment entered pursuant to a jury verdict in a comparative negligence case based on juror testimony or a proffer of evidence that the jury wrongly deducted the plaintiff's apportionment of fault in arriving at its damage award, the court wrongly invades the jury's deliberative process in violation of Rule 606(b) of the West Virginia Rules of Evidence.

In this action, the circumstances are more compelling than in *McDaniel* of the conclusion that the circuit court abused its discretion. First, as indicated above, the record before this Court contains no transcripts of juror interviews or other evidence of any kind concerning either the authenticity of the notes or an explanation as to their meaning. *See* n. 6, *supra*. Second, even assuming that the circuit court was correct in its determination concerning the notes, the reduction here, unlike the facts in *McDaniel*, related to past medical expenses only and not to the total amount of damages found by the jury. In other words, is it unclear why the jury herein would reduce a single element of damages by 40% and leave the other elements untouched. One explanation offered by the appellant is that the jury concluded that not all of the past medical expenses of the appellee were "proximately caused" by the accident of December 4, 1992. In fact, as stated above, the evidence of the extent of the appellee's injuries resulting from the accident differed significantly.

Consequently, under the principles of *Scotchel* and *McDaniel*, *supra*, the circumstances herein, *a fortiori*, warrant the conclusion that the circuit court abused its discretion in granting the appellee's motion for a new trial based upon the notes found in the jury room.[8] The notes were never authenticated or explained, and the circuit court's determination that a new trial should be granted, because of the notes, resulted, in this action, in an improper inquiry into the jury's deliberative process.

---

**8.** As indicated above, the issues of liability and the extent of the appellee's injuries were contested at trial. In that regard, a review of the testimony reveals that the circuit court properly instructed the jury, *inter alia*, upon the principles of the duty to keep a reasonable lookout while operating a motor vehicle and mitigation of damages. Such questions constituted proper matters for jury consideration.

In addition, it should be noted that, during the trial, the appellant's counsel was allowed to elicit testimony that some of the appellee's medical bills had been paid through workers' compensation. That testimony, however, was brought out in response to evidence of the appellee to the effect that he lacked the financial resources to obtain proper medical treatment. Although such evidence of a "collateral source" is generally inadmissible, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981), the circuit court gave a limiting instruction to the jury concerning the consideration of the evidence. Moreover, it should be noted that Susan Bertrand, a medical expert called by the appellee, was allowed to indicate to the jury that she was of the opinion that this State's workers' compensation system often failed to provide care or resources for legitimate claims. In any event, this Court is of the opinion that, under the circumstances of this action, references to collateral sources did not constitute grounds for a new trial.

Finally, during its deliberations, the jury asked the circuit court a question concerning the finding of respective percentages of negligence between the parties, and the circuit court answered the question pursuant to the principles of *Bradley v. Appalachian Power Company*, 163 W.Va. 332, 256 S.E.2d 879 (1979), by responding, in essence, that the appellee would not be barred from recovery, so long as his negligence, if any, did not equal or exceed the negligence of the appellant. We find nothing in the fact that such a question was asked to indicate that the jury failed to follow the law with regard to the verdict.

Upon all of the above, therefore, the final order of the Circuit Court of Kanawha County, entered on September 9, 1996, is reversed, and this action is remanded to that court for reinstatement of the $41,921.86 judgment.

Reversed and remanded.