650 S.E.2d 114

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Tony Franklin DAUGHERTY, Sr., Defendant Below, Appellant.**

**No. 33075.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 14, 2006.

Decided Nov. 29, 2006.

Barry L. Bruce, Thomas W. White, Barry L. Bruce & Associates, Lewisburg, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

Tony Franklin Daugherty, Sr. (hereinafter Mr. Daugherty) appeals an order of the Circuit Court of Summers County denying his motion for a new trial. Mr. Daugherty was convicted of four counts of sexual abuse by a parent and sentenced to a period of 10 to 20 years for each conviction.[1] Subsequent to the convictions and sentences, Mr. Daugherty filed a motion for a new trial based upon the jury's consideration of alleged extrinsic evidence.[2] After conducting an evidentiary hearing, the circuit court denied the motion for a new trial. Here, Mr. Daugherty contends that the trial court committed error in denying his motion for a new trial.[3] After a careful review of the briefs and record in this case, we affirm the trial court's decision.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Daugherty and his wife, Rebecca Daugherty, gave birth to a son, T.J., on July 9, 1991.[4] As a result of domestic problems, sometime in July of 1998 Mrs. Daugherty left her home with T.J. and moved into a women's shelter. While at the shelter, she learned that Mr. Daugherty may have sexually abused T.J. before he was taken out of the home. The initial sexual abuse allegations apparently could not be substantiated. However, subsequent to the sexual abuse allegation, T.J. exhibited behavioral problems that required him to be hospitalized for psychiatric treatment on several occasions. During the last hospitalization in early 2000, T.J. disclosed that Mr. Daugherty raped him. In March of 2001 a grand jury returned an indictment against Mr. Daugherty alleging 16 counts of sexual offenses.[5]

The case was tried before a jury in September of 2004. During the trial, T.J. testified that on four occasions Mr. Daugherty "[p]ut his penis in my anus." The record does not disclose whether or not Mr. Daugherty testified during the trial.[6] The jury returned a verdict finding Mr. Daugherty guilty of four counts of sexual abuse by a parent.[7] On September 26, 2005, the circuit court entered an order sentencing Mr. Daugherty to four concurrent sentences of 10 to 20 years imprisonment.[8]

Subsequent to entry of the sentencing order, Mr. Daugherty learned of allegations that a juror, William McBride, stated during deliberations that he knew Mr. Daugherty and his family and that he was afraid that something could happen to his children if Mr. Daugherty was not convicted. These allegations were made by affidavits from four jurors: Harvey Bryant, Everette Cox, Sharon

---

1. The sentences were ordered to run concurrently.

2. Mr. Daugherty had previously filed another motion for new trial which was denied. The second motion for a new trial involved in this appeal was filed after Mr. Daugherty received information alleging a juror was biased.

3. Mr. Daugherty's petition for appeal alleged six assignments of error. This Court granted the petition for appeal only as to the issue involving the jury's alleged consideration of extrinsic evidence.

4. "Consistent with our practice in cases involving sensitive matters, we use the victim's initials[.]" *Coleman v. Painter*, 215 W.Va. 592, 594, 600 S.E.2d 304, 306 (2004).

5. The indictment charged Mr. Daugherty with four counts of first degree sexual assault; four counts of third degree sexual assault; four counts of sexual abuse by a parent; and four counts of incest.

6. The trial lasted six days. However, the record submitted on appeal only contains the transcript of the first two days of the trial.

7. The jury acquitted Mr. Daugherty of the first degree sexual assault and incest charges. The trial court, on a motion by the State, dismissed the third degree sexual assault charges.

8. Mr. Daugherty was originally scheduled to be sentenced on December 6, 2004. However, under an order agreed to by the parties the sentencing hearing was continued until 2005.

Crookshanks and Ricky Vandall.[9] As a result of this information, Mr. Daugherty filed a motion for a new trial. An evidentiary hearing was held on the motion. During the hearing, Mr. Daugherty and all twelve former jurors testified.[10] After the conclusion of the hearing the trial court entered an order denying Mr. Daugherty's motion for a new trial. From this order, Mr. Daugherty now appeals.

## II.

## STANDARD OF REVIEW

 We are asked to decide whether the trial court committed error in denying Mr. Daugherty's motion for a new trial. This Court has held that:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). *See State v. Crouch*, 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994) ("The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse."). We have also held with respect to alleged juror misconduct that:

A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a

new trial, proof of mere opportunity to influence the jury being insufficient.

Syl. pt. 1, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995) (quoting Syl. pt. 7, *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932)).

## III.

## DISCUSSION

 Mr. Daugherty contends that Mr. McBride stated during jury deliberations that he knew Mr. Daugherty and his family and that he was afraid something could happen to his children if Mr. Daugherty was not convicted. Mr. Daugherty contends that these alleged statements constituted improper extrinsic evidence. Therefore, he is entitled to a new trial.

 In the decision of *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981) this Court held that "[a] jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." Syl. pt. 1, *Scotchel*. Subsequent to the decision in *Scotchel*, "a rule of evidence [was adopted] which specifically addresses the parameters of inquiring into a jury verdict." *McDaniel v. Kleiss*, 198 W.Va. 282, 288, 480 S.E.2d 170, 176 (1996). In 1994, this Court adopted Rule 606(b) of the West Virginia Rules of Evidence. Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

---

**9.** Contrary to his affidavit, Mr. Vandall testified that he did not hear Mr. McBride make the statements.

**10.** There were other witnesses who testified.

Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Professor Cleckley has pointed out that:

Rule 606(b) bars juror testimony regarding four topics: (1) the method or arguments of the jury's deliberation; (2) the effect of any particular thing upon an outcome in the deliberation; (3) the mindset or emotions of the juror during deliberation; and (4) the testifying juror's own mental process during the deliberations.

Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* (Vol.1), § 6–6(B), pg. 6–55 (2000).

Rule 606(b) provides a narrow exception that would allow jurors to testify to certain matters occurring during deliberations. Under that exception "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Cleckley, *Handbook on Evidence*, § 6–6(B), at 6–55. See Syl. pt. 2, *Scotchel* ("Courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process."). In determining whether a jury's consideration of extrinsic evidence warrants a new trial, the following standard has been recognized by this Court:

When jurors consider extrinsic evidence, a new trial is required if the evidence poses a reasonable possibility of prejudice to the defendant.... Prejudice from extrinsic evidence is assumed in the form of a rebuttable presumption and the government bears the burden of demonstrating that the consideration of the evidence was harmless.

*State ex rel. Trump v. Hott*, 187 W.Va. 749, 753, 421 S.E.2d 500, 504 (1992) (quoting *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir.1984)).

Mr. Daugherty contends that the evidence at the post-trial hearing established the presumption of prejudice and that the State failed to rebut that presumption. We disagree.

To begin, Mr. Daugherty contends that under our decision in *Trump*, he is entitled to a new trial. In *Trump*, the defendant was convicted of four counts of second-degree sexual assault. Subsequent to the conviction, a juror came forward and alleged that during the deliberations another juror told the jury panel that the defendant had previously been accused or convicted of wife beating and child molestation. The circuit court held a hearing and questioned the other jurors to determine if the statements were in fact made during the deliberations. Five jurors questioned indicated that the statements were made. Thereafter, the trial court indicated that it was inclined to grant a new trial. However, the trial court invited the prosecutor to seek a writ of prohibition from this Court to preclude such a ruling. This Court declined to issue a writ of prohibition. The opinion in *Trump* instructed the circuit court that before granting a new trial, it should consider whether the evidence against the defendant was so overwhelming that the juror's remarks were harmless.

We do not believe that our decision in *Trump* supports granting Mr. Daugherty a new trial. The extrinsic evidence in *Trump* involved other alleged past acts by the defendant. The alleged extrinsic evidence in this case *does not* involve alleged past wrongs committed by Mr. Daugherty. In this case, Mr. Daugherty contends that Mr. McBride informed the jury that he knew Mr. Daugherty and his family and that he was afraid that something could happen to his children if Mr. Daugherty was not convicted. Clearly *Trump* is distinguishable.

As previously indicated, the trial court took testimony from each of the jurors and Mr. Daugherty. In its order denying the motion for new trial, the court made the following relevant findings of fact:

[1] Juror Bryant testified that Juror McBride stated that he (McBride) lived in the vicinity of the Defendant, that McBride knew the Defendant's family, and that McBride had two children whom he feared for if the Defendant were not found guilty.

[2] Juror Cox testified that McBride stated that he (McBride) knew the Defen-

dant and his family and if they (the jury) did not do something, McBride feared for his own children.

[3] Juror Crookshanks testified that Juror McBride stated he was scared for his family if the Defendant were not put in jail, and that he knew the Defendant's family and the jury should be afraid.

[4] Juror Vandall testified that he signed a document (presumably the affidavit) provided by an investigator for the Defendant, but he did not hear any comments alleged by the Defendant.

[5] Juror McBride testified that he did not know the Defendant nor his family, that he does not live in the vicinity of the Defendant, and that he did not make any of the alleged comments during deliberation.

[6] The remaining eight jurors testified that they did not hear any comments from Juror McBride.

[7] Defendant Daugherty testified that he did not know Juror McBride or any other jury member.[11]

Based on the above facts, the circuit court made specific legal conclusions as to the issue of Mr. McBride stating (1) that he was afraid that something could happen to his children if Mr. Daugherty was not convicted, and (2) that he knew Mr. Daugherty and his family. We will review each legal conclusion separately.

(1) **Fear for his children.** As to the issue of Mr. McBride stating to the jury that he was afraid that something could happen to his children if Mr. Daugherty was not convicted, the trial court concluded that "although [Mr. McBride] may have commented upon his mental process, or fear, of future harm by the accused, evidence of this to overturn a verdict is violative of Rule 606(b) and must not be utilized to impeach the conviction." We agree with the circuit court's legal conclusion on this issue. As pointed out by Professor Cleckley, "[t]he mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every

verdict at the mercy of jurors and invite tampering and harassment." Cleckley, *Handbook on Evidence*, § 6–6(B), at 6–56. Further, this Court made the following observations in *Scotchel:*

> The reason traditionally advanced to preclude impeachment of the jury verdict based on what occurred during the jury's deliberations is primarily grounded on public policy protecting the privacy of the jurors. This policy prevents both litigants and the public from being able to gain access to the jury's deliberative process. Inherent in this proposition is the recognition that ensuring the privacy of the jury's deliberations will promote a full, frank and free discussion of all the issues submitted to the jury. It is also recognized that the very nature of the deliberative process, which requires the jurors to arrive at a unanimous verdict, must of necessity require accommodation of individual views. This process of accommodation should not be utilized as a means to attack the general verdict. The rule against impeachment of the verdict also serves to prevent litigants from attempting to influence or tamper with individual jurors after the verdict has been rendered. There is also recognition that limiting impeachment promotes finality of jury verdicts.

*Scotchel,* 168 W.Va. at 548, 285 S.E.2d at 387. Thus, "the matters raised by [Mr. McBride] related, intrinsically, to the jury's deliberative process and resulted in no grounds to set the verdict aside." *Brooks v. Harris,* 201 W.Va. 184, 188, 495 S.E.2d 555, 559 (1997).

■ (2) **Prior knowledge of Mr. Daugherty and his family.** As to the issue of Mr. McBride stating that he knew Mr. Daugherty and his family, the circuit court's order addressed this statement in the context of Mr. Daugherty's claim that Mr. McBride should have been disqualified for cause. The issue of disqualification of Mr. McBride for cause, was a separate assignment of error in Mr. Daugherty's petition for appeal to this Court. As previously noted, this Court refused the appeal on that issue and several others. Consequently, we will not disturb

---

**11.** Mr. Daugherty does not challenge the circuit court's findings of fact. Instead, Mr. Daugherty takes issue with the legal conclusion reached from those findings.

the basis for the trial court's ruling on this issue. Even though the trial court did not address the disqualification for cause issue in the context of the extrinsic evidence claim, we will do so because that is how the issue was presented in this appeal and briefed by the parties.

Assuming, for the sake of argument, that Mr. McBride did inform the jury that he knew Mr. Daugherty and his family, that statement does not warrant granting Mr. Daugherty a new trial. The limited record presented in this appeal does not show that the statement posed a reasonable possibility of prejudice to Mr. Daugherty. The jury was presented with 12 of the 16 counts against Mr. Daugherty, but convicted him of only four counts. The victim in this case, T.J., testified to being sexually abused and identified Mr. Daugherty as the abuser. The State presented the testimony of a psychologist who reviewed T.J.'s mental health records. When asked if the behavior outlined in T.J.'s mental health records was consistent with a victim of child sexual abuse, the psychologist answered as follows:

> As I testified earlier, children who have been sexually abused do often exhibit certain behaviors at a higher frequency than normal children, behavior that I've described to you [regarding T.J.], sexually aggressiveness toward other children, trying to be sexual with other children, hunching things, masturbating, putting things in his anus, eating—all those behaviors, I think, could be seen as symptoms or behaviors that was [sic] caused by the trauma of sexual abuse.

From what this Court is able to ascertain from the limited record presented on appeal, the evidence to sustain the four convictions was sufficient beyond a reasonable doubt. *See United States v. Saya*, 247 F.3d 929, 939 (9th Cir.2001) ("Also of consequence in determining whether the introduction of extraneous information constituted prejudice is the amount and strength of the government's

evidence against the defendant."). Therefore, assuming the statement was made, we are convinced that it did not pose a reasonable possibility of prejudice to Mr. Daugherty.[12]

## IV.

## CONCLUSION

The circuit court's denial of Mr. Daugherty's motion for a new trial is affirmed.

Affirmed.

---

**12.** Mr. Daugherty points out that Jurors Bryant, Cox and Crookshanks testified that Mr. McBride's statements impacted their decision in voting to convict Mr. Daugherty. This evidence, however, cannot be considered. This Court has indicated that "[w]hen considering the impact of the [extrinsic evidence], courts have used an objective test and have held that the subjective impact of the [extrinsic evidence] on individual jurors cannot be inquired into because it intrudes on the deliberative process." *Trump*, 187 W.Va. at 754, 421 S.E.2d at 505.