**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-7016**

---

TONY DAUGHERTY,

        Petitioner - Appellant,

    v.

DENNIS DINGUS, Warden,

        Respondent - Appellee.

---

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Frank W. Volk, Chief District Judge.  (5:12-cv-00043)

---

Argued:  January 28, 2026                                        Decided:  March 30, 2026

---

Before WILKINSON, Circuit Judge, FLOYD, Senior Circuit Judge, and David J. NOVAK, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Senior Judge Floyd wrote the opinion in which Judge Wilkinson and Judge Novak joined.

---

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Holly J. Wilson, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF:** Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  John B. McCuskey, Attorney General, Michael R. Williams, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

FLOYD, Senior Circuit Judge:

Petitioner Tony Daugherty seeks habeas relief following his 2004 conviction in West Virginia state court. During his trial's jury deliberations, one juror told the others that he knew Daugherty's family and he feared for their safety should they fail to reach a guilty verdict. Daugherty sought post-conviction relief in West Virginia state court, alleging that this juror's comments introduced an impermissible external influence into the deliberations, thereby violating his right to an impartial jury. The West Virginia Supreme Court of Appeals (WVSCA) rejected this claim. Daugherty then unsuccessfully sought habeas relief in federal district court under 18 U.S.C. § 2254. He appeals the district court's determination that the state court did not unreasonably apply Supreme Court precedent in finding that the juror's comments did not introduce external influence. We affirm.

I.

In 2001, Daugherty was charged for sexual abuse of his son in Summers County, West Virginia. He was tried in September 2004 and, after two days of deliberation, the jury returned a guilty verdict as to four counts of sexual abuse by a parent. After trial, it was discovered that one member of the jury, Juror McBride, told others during deliberations that he (1) knew Daugherty's family and (2) feared what might happen to the family should Daugherty be acquitted. In an evidentiary hearing before the state trial court following Daugherty's motion for a new trial, four jurors confirmed that Juror McBride

2

made either one or both of these statements.[1]  Juror McBride denied making these statements and denied knowing Daugherty or his family.

Daugherty sought a new trial in the West Virginia state court system based on the alleged influence of extrinsic evidence in the deliberation process.  The state trial court denied Daugherty's motion.[2]  The WVSCA affirmed, holding that "matters raised by Mr. McBride related, intrinsically, to the jury's deliberative process and resulted in no grounds to set the verdict aside." *State v. Daugherty*, 650 S.E.2d 114, 118 (W. Va. 2006) (quoting *Brooks v. Harris*, 495 S.E.2d 555, 559 (W. Va. 1997)).

Daugherty then sought habeas relief under 28 U.S.C. § 2254 in federal court.  The Magistrate Judge issued a Report and Recommendation to deny the petition, and Daugherty filed timely objections.  The District Court for the Southern District of West Virginia ultimately adopted the Magistrate Judge's findings.  The district court concluded that the WVSCA did not contradict or unreasonably apply Supreme Court precedent when it determined that Juror McBride's statements—even taken as a single, unified comment—

---

[1] Several jurors testified as to one or both of McBride's comments with varying language.  For example, Juror Crookshanks explained that McBride told the jurors that "he knew [Daugherty's] family" and that "he was scared for his family if Tony [Daugherty] wasn't put in jail or sentenced." J.A. 399–400.  Juror Bryant similarly confirmed McBride stated he knew Daugherty's family and that McBride also told the jurors that "he lived in the vicinity [of Daugherty's family] and if not found guilty he feared for his—he had two children." J.A. 392.

[2] Though outside the scope of this appeal, the state trial court also rejected Daugherty's argument that McBride's alleged knowledge of Daugherty and his family by itself was sufficient for a new trial.  Because both Daugherty and McBride testified that they did not know each other, the court found that there was insufficient evidence to overcome the "presumption of [jury] impartiality." J.A. 147.  This appeal remains limited to Daugherty's argument that McBride's comments constituted extrinsic evidence.

3

were intrinsic to the jury deliberation process and did not originate from extraneous sources. Daugherty now appeals that decision, maintaining his argument that the WVSCA failed to reasonably apply clearly established law as determined by the Supreme Court. West Virginia disagrees and contends that not only has Daugherty waived his argument on appeal, but also that the WVSCA did not err in this manner. The State also argues in the alternative that should this Court determine that McBride's comments introduced external influence, we should nevertheless deny habeas relief because the comments did not actually prejudice the verdict.

## II.

"We review de novo the district court's order denying . . . habeas relief." *Bowman v. Stirling*, 45 F.4th 740, 752 (4th Cir. 2022). But § 2254 prescribes a higher degree of deference to state court decisions. We review a state court's factual findings based on whether there was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

As for the state court's legal conclusions, "[w]e may not grant federal habeas relief unless we conclude that [a state's] adjudication of the claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Bell v. Jarvis*, 236 F.3d 149, 157 (4th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(1)). In other words, the Petitioner seeking relief "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

4

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This inquiry requires federal courts to "focus on what a state court knew and did, and to measure state-court decisions against [the Supreme Court's] precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation modified) (emphasis omitted).

A.

Before examining the merits of Daugherty's habeas claim, we first address and ultimately reject West Virginia's argument that Daugherty has waived his claim on appeal.

The State explains that "[Daugherty] focused only on Section 2254(d)(2)—an unreasonable determination of facts" in his objections to the Magistrate's Report and Recommendation. Resp. Br. at 38 (citation modified). "[B]ut [he] now directs his appeal towards Section 2254(d)(1)—an unreasonable application of law." *Id.* (citation modified). In the State's eyes, Daugherty failed to preserve the latter argument for appeal.

We disagree with the State's position. "[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). In his objections, Daugherty identified the "internal" rather than "external" influence problem that is at the crux of this appeal. J.A. 552–54. Though the characterization of Juror McBride's comments as either "internal" or "external" may be a factual question, the impact of such comments on Daugherty's Sixth Amendment rights is a legal one.

5

It is true Daugherty framed this dispute in a heading as being "based on an unreasonable determination of the facts related to that issue." J.A. 552 (citation modified). But the substance of his argument focuses on the alleged *legal* error made by the WVSCA. Daugherty specifically stated that "[t]he Supreme Court has 'clearly established' that 'an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury.'" J.A. 553 (quoting *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014)). He then elaborated on the very legal argument that serves as the foundation for his appeal: that the state court erred in its interpretation of Juror McBride's statements because of its erroneous reading of Sixth Amendment law.

Daugherty specifically cited Supreme Court precedent controlling the issue of whether an influence is external or internal. *See, e.g.*, J.A. 554 (citing *Tanner v. United States*, 483 U.S. 107, 117 (1987)). He then explained that "the key information [Juror McBride's statements] conveyed . . . was external to all the proceedings at trial," *id.*, and therefore violated his "rights to due process of law," *id.* at n.2. We therefore agree with Daugherty that his objections presented a "mixture of both" factual and legal arguments—with the ultimate goal of demonstrating that external comments deprived him of his Sixth Amendment right to an impartial jury. Reply Br. at 1. Even if this argument did not explicitly identify § 2254(d)(1) as its ground for appeal, Daugherty presented the argument "with sufficient specificity" so as to reasonably alert the district court that it objected to the Magistrate Judge's legal conclusions—not merely factual conclusions. *See Midgette*, 478 F.3d at 622. Therefore, we may dispense with the State's claim that Daugherty has failed to preserve it on appeal.

6

B.

We thus turn to Daugherty's argument that the WVSCA failed to reasonably apply clearly established Supreme Court precedent.  First, Daugherty contends the WVSCA erred by analyzing each of McBride's statements in isolation, rather than as a single, unified statement.   Second, Daugherty argues that McBride's statements, "taken in full," introduced external information during jury deliberations, thereby depriving Daugherty of a fair trial.  Opening Br. at 29.  In Daugherty's view, the WVSCA thus failed to correctly apply clearly established federal law in its interpretation of McBride's comments.

We disagree.   Regardless of whether we consider the comments together or in isolation, we find that Supreme Court precedent does not characterize comments like those made by McBride as introducing external influence.

1.

We first address and set aside Daugherty's argument that the WVSCA erred in "considering [Juror McBride's] statements in isolation."  Opening Br. at 33; *see also Daugherty*, 650 S.E.2d at 118–19 (separately analyzing McBride's statements that he knew Daughtery's family and he feared for Daughtery's family's safety if Daughtery were acquitted).  This is relevant, according to Daugherty, because a unified analysis of the statements "show[s] that Juror McBride was implying the existence of additional information about Daugherty that the jury should consider."  Opening Br. at 34.  West Virginia counters that this is a factual determination with a deferential standard of review,

7

and that "[r]egardless of whether the statements are read together or separately, it was reasonable for the state court to conclude that the statements were internal." Resp. Br. at 39. Though this issue may involve both factual and legal questions, we agree with West Virginia that the outcome has no bearing on whether the state court's decision was unreasonable. The possibility that the comment(s) implied the existence of additional information does not automatically render them external. Rather, Supreme Court precedent guides us to examine their origin and possible third-party influence on Juror McBride. We ultimately conclude that regardless of whether the statements are taken together or separately, the comments do not qualify as "external" under clearly established Supreme Court precedent.

2.

We finally turn to the substance of Daugherty's appeal, which requests habeas relief based on the notion that the state court unreasonably applied Supreme Court precedent when determining Juror McBride's statements did not constitute an external influence on the jury. Because clearly established Supreme Court law governing extrinsic jury influence did not extend to cover statements of this sort at the time of state court's decision, we affirm the district court's judgment.

The Sixth Amendment provides criminal defendants with "the right to a . . . trial[] by an impartial jury." U.S. Const. amend. VI. "It is clearly established under Supreme Court precedent that an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury." *Barnes*, 751 F.3d at 240. "[T]he Sixth

8

Amendment's guarantees," however, "do not require judicial consideration of juror allegations regarding influences internal to the deliberation process." *Robinson v. Polk*, 438 F.3d 350, 363 (4th Cir. 2006) (citing *Tanner*, 483 U.S. at 117, 120, 127). As the district court correctly explained, "the narrow question before the Court is whether the statement by Juror McBride was external, thus violating [Daugherty's] Sixth Amendment right to an impartial jury and rendering the state court's decision contrary to, or an unreasonable application of, clearly established federal law." J.A. 561. For this inquiry, we examine precedent distinguishing external from internal influences as of 2006, when the WVSCA affirmed Daugherty's conviction. *See Greene*, 565 U.S. at 38.

As West Virginia notes, we explained in 2006 that "the Supreme Court ha[d] never provided a formula for deciding whether a particular influence upon the jury was external or internal." Resp. Br. at 45 (alteration in original) (quoting *Robinson*, 438 F.3d at 362). As of that year, the Supreme Court had only identified external influences depriving defendants of the rights to an impartial jury in a handful of cases. "External" information included a third-party's attempt to bribe a juror, *Remmer v. United States*, 347 U.S. 227, 228–30 (1954), a bailiff's comments about a defendant that prejudiced jurors, *Parker v. Gladden*, 385 U.S. 363, 364–65 (1966) (per curiam), and law enforcement officers' association and socialization with jurors during a trial in which they testified, *Turner v. Louisiana*, 379 U.S. 466, 473–74 (1965).[3]

---

[3] Daugherty requests we read another rule into this body of law. The Ninth Circuit has stated that "in some instances a juror's personal experiences may constitute extrinsic evidence," such as "when a juror has personal knowledge regarding the parties or the issues (Continued)

9

Given this background, we compare the statements at issue here with those clearly defined as external by the Supreme Court. Juror McBride's statements did not represent the kind of third-party communication clearly prohibited by the Court. There is no evidence of tampering by third parties outside the jury. *Cf. Remmer*, 347 U.S. at 228–30. The comments were not derived from any communication with other individuals during the trial and they did not originate from non-jury figures, such as law enforcement officers or bailiffs. *Cf. Parker*, 385 U.S. at 364–65; *Turner*, 379 U.S. at 473–74. We agree with the State that McBride's comments "came from his own mental machinations, whether true or not." Resp. Br. at 47. This is a far cry from the Supreme Court's limited precedent governing external influence.

Our Court's application of Supreme Court precedent in *Robinson* is instructive. There, we found that a juror's request for a bailiff to bring a copy of the Bible into the jury room and the juror's subsequent reading of the Bible during sentencing deliberations was "not an 'external' influence." *Robinson*, 438 F.3d at 363–64. The bailiff in *Robinson* did not "instruct[] the jury to consult the Bible" and merely provided the Bible upon request. *Id.* at 366. Recitation of the Bible was "analogous to the situation where a juror quotes the Bible from memory, which assuredly would not be considered an improper influence." *Id.*

---

involved in the litigation that might affect the verdict." *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). This out-of-circuit decision, however, cannot be regarded as "clearly established" Supreme Court law on this issue. The line in question does not cite to any Supreme Court precedent and therefore gives us no direction to consider clearly established law. We therefore decline to consider this a "clearly established" rule.

10

at 364. It was therefore reasonable for the state court "to conclude that the Bible [was] not analogous to a private communication, contact, or tampering with a juror." *Id.* at 363.

This contemplated scenario of quoting the Bible from memory resembles McBride's comments, which were derived from his own mind. And like Bible passage recitation, McBride's comments did not "bear[] on a fact at issue in [a] case" that sought to determine whether Daugherty was guilty of sexual abuse. *Id.* at 363. We specifically explained that "it would have been reasonable for the [state] court to conclude that the Bible had no bearing on any *fact* relevant to sentencing, and was therefore not tantamount to 'evidence' that was used against [the defendant] at sentencing." *Id.* Similarly, it would have been reasonable for the WVSCA to find that McBride's comments had no bearing on any fact relevant to the charges and consequently were not "evidence" used against Daugherty, regardless of their origin. *See id.*

Daugherty's argument that the statements together "impl[ied] the existence of additional information about Daugherty that the jury should consider" simply does not meet the bar set by governing Supreme Court precedent. *See* Opening Br. at 34. Like in *Robinson*, there is insufficient evidence in the record to conclude Juror McBride's statements were "analogous to a private communication, contact, or tampering with a juror." *See* 438 F.3d at 363. It was therefore reasonable for the WVSCA to find that McBride's comments did not constitute extrinsic influence.[4]

---

[4] We accordingly need not reach West Virginia's alternative argument that McBride's comments, if external, did not actually prejudice the verdict.

11

III.

For the foregoing reasons, we affirm the district court's judgment.

*AFFIRMED*